*Hewitt* for appellant; *Woolley & Kinkead* for appellees.

Scott, &c.
*vs*
Curl, &c.

---

## Scott, &c. *vs* Curle, &c.

### APPEAL FROM THE BOURBON CIRCUIT.

*Church property. Parties.*

CHANCERY.

*Case.* 5.

*December* 8.

JUDGE BRECK delivered the opinion of the Court.

SCOTT AND SADLER, claiming as trustees of the Bethlehem Church of the Regular Baptist order, the exclusive use of a house of public worship, in the county of Bourbon, and seeking to quiet said Church in the enjoyment thereof, exhibited their bill in chancery against Curle and Howe, as trustees of the Bethlehem Reformed or Christian Church, then in the occupation of said house of worship. The defendants resisted the claim set up, and the relief sought by the complainants having been refused, and their bill dismissed by the Court below, they have appealed to this Court.

Case stated, and decree of the Circuit Court.

It appears that in 1811, one Philip Ament conveyed one acre of land, lying in the county of Bourbon, and upon which there was a house for religious worship, called the Bethlehem Meeting House, to Joseph Adair and George Thomas and their successors, deacons of the Bethlehem Church, in trust for the use of said Church, of the Regular Baptist order, and also for the use of a public school, one half of the lot, that upon which the meeting house stood, for the use of the Baptists, and the other half for the use of a public school; the whole lot to be used as a yard in common by the Church and School.

The Bethlehem Church, or the Church occupying the property in contest at the date of the deed, was of the

Scott, &c.
   vs
Curle, &c.

Regular Baptist order, and it was manifestly the inten-
tion of the grantor or donor, in view of all the provis-
ions in the deed, to secure the property or one half of
it, to the exclusive use of that particular Church or So-
ciety—or to the Bethlehem Church of the Regular Bap-
tist order.

The Bethlehem Church or religious society, thus ex-
isting at the date of the deed, it is contended, has ever
since continued to exist, and still exists, without any
change in its organization, and is the same society now
represented by the defendants in this suit. On the other
hand, it is insisted, that although it may not have chang-
ed its organization, that it nevertheless has ceased to be
a Church of the Regular Baptist order, or of any de-
nomination of Baptists, not only in name, but in reli-
gious principles and faith—and such, from the evidence
in the record, appears to be the fact. It seems to have
dissolved all connection with the Baptist order, and
now recognises itself, and is called and known as the
Reformed or Christian Church. When this change in
doctrine and name took place, about twenty years since,
some of the members, who did not concur in opinion
with a large majority of the society, but were disposed
to adhere to the Baptist order, left the Church by regu-
lar letters of dismission. Some moved away and others
died, so that in 1846, there remained but three original
members, or who were members when the Church was
a Baptist Church, and who still adhered to that de-
nomination—and one of them, after withdrawing, sub-
saquently joined the Church represented by the defend-
ants. These three members, aged females, in 1846,
signed an instrument of writing, declaring in substance,
that as members of the Bethlehem Church, they elected
and appointed the appellants trustees of said Church,
to hold the legal title of the property thereof, as suc-
cessors of the original trustees, who were both deceased.
The County Court of Bourbon, subsequently, in virtue
of this writing, appointed the appellants trustees of the
Bethlehem Church to hold the title, &c.

The statute of
1814 authorizing
churches to ap-
In view of this state of case, the question arises
whether the appellants, complainants below, could main-

tain this suit. We think they could not. Their appointment as trustees is not sustained by the act for the benefit of Religious Societies, of 1814, (2 *Stat. Law,* 1347.) That act only authorized the appointment of trustees by a seciety or set of christians associated together in congregational form. The appointment in this case was not made by a society of that kind. The three members who attempted to make the appointment, did not act as a society or Church. They had never organized, nor associated together as such; but acted merely in their individual capacities as members of the Bethlehem Church. There appears never to have been any separate organization prior to the institution of this suit by them, or of any of those who did not concur and unite with the majority of the original Society or Church in the change in regard to their religious faith and name.

It is manifest, therefore, we think, that the complainants were not trustees of the Bethlehem Church, and could not sue as such under the act of 1814. Nor could they, for the same reasons, as trustees, or as a committee, maintain the suit in virtue of the act of 1835.

They were not officers nor members of the Bithlehem Church, nor of any other Church, and never were, so far as appears, and consequently were not, in any aspect of the case, beneficiaries under the deed of Ament, and having no authority as trustees or as a committee, nor interest in the subject matter, they had clearly no right to sue, and their bill was properly dismissed.

It is true they allege in an amended bill, that since the institution of this suit, the three members appointing them trustees, had organized themselves and had received ten members into their communion, and re-adopted the rules and faith as they existed in the Regular Baptist order.

But whether the Church thus organized could rightfully claim as a beneficiary under the trust deed, we need not here decide, as it is not alleged, nor does it appear that the complainants were either officers or members of that Church, or that they had ever been

*Margin notes:*

Scott, &c.
*vs*
Curle, &c.

point Trustees by *a society or sect of christians,* to hold and preserve the church property, does not authorize the individual members not acting as a society to make such appointment.

Nor could persons so appointed maintain a suit in virtue of the act of 1815; no written evidence of their appointment appearing, nor any right as a committee, Trustees, or as beneficiaries.

appointed trustees, or a committee by it. It is true, one witness says they. were· so considered by the Church, but there is neither allegation nor proof of their election or appointment. ··

Wherefore, the decree is affirmed.

*Smiths* for appellants; *Brown, Williams and Martin* for appellees.