JUDGE PETERS
delivered the opinion of the court:
Appellees instituted this action against appellants, alleging that they are the legally constituted trustees of a local congregation of the Methodist Episcopal Church, *216 South, worshiping at Mt. Olivet, in' Garrard county, and as such trustees, hold the legal title to the church building, known as Mt. Olivet, in said county, for the exclusive use of said congregation to worship in, of which they are also members.
They further allege that said building, with about two acres of ground attached, had been in the uninterrupted possession of themselves and their predecessors, and the members worshiping there, for a period of more than twenty years, before this action was brought; that the ministers who .have officiated there during that time have been supplied by the Kentucky Conference, which is under the control and jurisdiction of the General Conference of the Methodist Episcopal Church, South; that H. R. Coleman, the minister then preaching to them statedly, was sent there by said Kentucky Conference, and that no minister, unless he is under the control of the Kentucky Conference, or the General Conference of the Methodist Episcopal Church, South, has any right to occupy said house, or to preach there without the permission of said trustees; but that appellant, Humphrey, who is not a minister belonging to the Kentucky Conference, nor of the General Conference of the Methodist, Episcopal Church, South, had, with the other appellants, on several occasions recently, before the bringing said action, forcibly, and against the will of said trustees and of said congregation, and without right, entered said house, and occupied it (as they allege) for religious worship.
That said church property was, in 1840, conveyed by the owner of the land to certain persons named in the deed, as trustees of the Methodist Episcopal Church ; but that, since the date of said conveyance, viz: in the year 1844, the General Conference of the United States, with the concurrent action of the Conferences of the Southern Slates, *217 adopted terms of separation, and according to these terms an organization was formed independent of the General Conference of the United States, composed of the Southern Conferences, denominated the Methodist Episcopal Church, South. That, by reason of said separation, and the terms thereof, nearly all the churches in Kentucky, Mt. Olivet included, became integral parts of, and the church property passed to, the Methodist Episcopal Church, South, and that the congregation of Mt. Olivet has ever since been supplied with preachers by the Kentucky Conference, which belongs to, and is under the jurisdiction of, the General Conference of the M. E. Church, South; and they, therefore, pray that appellants and all others may be perpetually enjoined from opening and "using said church-house and grounds, or in any manner interfering with and disturbing them in their rights, without the consent of said trustees.
An answer and cross-petition was filed by appellants, in wiiich they deny that appellees .“ are the legal trustees of the Methodist Episcopal Church at Mt. Olivet, in Garrard county, Kentucky,” and deny that they were elected .as such by the regular constituted authorities of said church members; they also deny that they are the legal title-holders of said church-house and grounds for the use and benefit of the-members of said church worshiping there; but admit that said house and grounds have been in the possession of said officers and others for a number of years — the precise length of time, however, they do not admit; they admit that some of the ministers who have expounded the gospel there have been sent by the Kentucky Conference, but say that has not bet n exclusively the case, though they admit the minister who was then ‘officiating there was sent to the congregation by said Kentucky Conference. They deny that appellants, *218 by virtue of their “pretended office” (as they designate it), have the entire control of the property; and that other ministers of the Gospel, sent by other religious denominations or organizations, have no right to enter said house to preach; and that they and others have no right to occupy the house, unless permitted by,appellees or the Kentucky Conference.
They allege that they and others worshiping there, except Humphrey, have been members of the Methodist Episcopal Church. at Mt. Olivet, for a number of years, worshiping there, paying their dues, and being in regular communion with the other members of the church; that they have, within the last year or two, differed with other members of said congregation in some doctrinal points and in some points in relation to church government, and on that account had prepared to worship in the Mt. Olivet church separately, though peaceably, from appellees “and their followers,” and to that end said Humphrey had been sent to them by the proper constituted church authority, who is acceptable to them ; and they claim to have a right to the use of the house superior to that of appellees, and those associated with them ; they admit that they did enter said house to worship thére, and intended to continue to do so, if they had not been prevented by the restraining order of the court. They exhibit the deed by which the property was dedicated to and is held for religious worship, and insist that, according to its -terms, they cannot be legally excluded from the use of the house. They admit that about the year 1844 a separation occurred in the Methodist Episcopal Church of the United States, and a division of the church property was agreed upon by the church authorities; but they state that the appellants and appellees continued to worship peaceably together at the Mt. Olivet house for more than twen *219 ty years after said separation, and that appellants, and those agreeing with them, had not changed their church discipline or doctrine, but that appellees had changed, and now claim to be the only Methodist Episcopal Church, and seek to exclude a.ll others from hearing the Word of God except as they teach it.
Appellants allege that they are acting with, and under the authority of, the Methodist Episcopal Church, and as such have a right to occupy and control the church property at Mt. Olivet, and pray the court to adjudge to them the exclusive right to occupy and use said property; but if the court should decide that it could not so adjudge, then they claim that the case presents a schism, or division of the church, and, under the statute upon the subject, the court should adjudge each party the use of the house and appurtenances apart of the time, in proportion to their respective numbers; and for that purpose make their answer a cross-petition.
Appellees, ■ in a reply to the cross-petition, deny at length the right to a division of the time for the use of the house and appurtenances, for reasons not necessary to be recited here.
On final hearing, the relief sought by appellees was granted to them, and the cross-petition of appellants was dismissed with costs, and that judgment they now seek to reverse.
It is insisted — First. That the court below erred in overruling appellants’ objections to parol evidence of the appointment of a portion of appellees as trustees for said congregation.
The former owner of the land on which the church-house stands, in consideration of twenty dollars, on the 20th of March, 1840, conveyed two acres, by specified *220 metes and bounds, to nine named trustees, on the following trusts:
“ First. That they should erect, or cause to be erected thereon, a house or place of worship for the use of the members of the Methodist Episcopal Church, in the United Slates of America; and in further trust and confidence that they shall, at all times- thereafter, permit such ministers and preachers belonging to the church as shall, from time to time, be duly authorized by General Conference of the ministers and preachers * * * * of the said Methodist Episcopal Church, or by the Annual Conference authorized by the said General Conference. to preach and expound God’s holy word therein ; and in further trust and confidence, that, as often as any one or more of the trustees hereinbefore mentioned shall die or cease to be a member or members of the said church, according to the rules and discipline as aforesaid of the Methodist Episcopal Church, then and in such case it shall be the duty of the stationed minister or preacher authorized as aforesaid, w'ho shall have the charge of the members of said church, to call a meeting of the remaining trustees as soon as may be convenient, and when so meeting, the said minister or preacher shall proceed to nominate one or more persons to fill the place or places of him or them whose office or offices has or have been vacated as aforesaid, provided the person or persons so nominated shall have been one year a member or members of said Methodist Episcopal Church immediately preceding such nomination, and be at least twenty-one years old; and the said trustees so assembled shall proceed to elect, and by a majority of votes, appoint the person or persons so nominated to fill such vacancy or vacancies, in order to keep up the number to nine forever; and in case of an equal number of votes for and *221 against such nomination, the stationed minister or preacher shall have the casting vote.”
The residue of the deed relates to the manner the trustees, or any of them who may expend money or incur debts for the erection of the building, or other necessary outlays of money, shall be repaid and indemnified, and the disposition of any surplus that may remain in case a sale of the premises should be necessary, after satisfying the debts and liabilities of said trustees.
It appears from the testimony of Thomas J. Overstreet, who was, when he testified, and had been for a number of years previously thereto, a member of the local congregation worshiping at Mt. Olivet, that John Brown, William Ford, and William Kersey, three of the original trustees named in the deed, were dead before the election of 1865, at which some of the appellees were elected, and that Martin Jackson and James Isom, two others of the original trustees, had removed, and were not members. At the time of said election there were but three trustees, Burnside, Hamilton, and Campbell, and to fill the vacancies then existing it was deemed necessary to elect six trustees, and that number was elected on the 12th of August, 1865.
This witness further testified that he was, and had been for five years previously, recording steward of Bryants-Adlle circuit, and secretary of the Mount Olivet congregation ; that, by virtue of his office, he is the custodian of the record of the proceedings of said congregation, or such as are required to be entered of record; and that an election of trustees to fill said vacancies is shown by an order of record, a copy of which he inserts in his deposition in the following words :
“ On motion, the following persons were elected to fill Amcancies in the board of trustees of Mount Olivet Church, *222 to-wit: Wm. Lane, W. F. Overstreet, Asa S. Brown, II. Z. Perkins, Thos. Poor, J. C. England; original trustees, Wm. Burnsides, Isham Hamilton, and W. H. Campbell.”
That on the 12th of January, 1867, J. W. Poor was elected to fill the vacancy occasioned by the withdrawal of W. H. Campbell; and on the 16th of the next March, Daniel Swope was elected to fill the vacancy caused by the withdrawal of Asa S. Brown, which facts the witness states' the record shows, and which he then had.
The action, as the caption of the petition shows, is prosecuted in the.names of Hamilton and Burnside two of the original trustees, and of those since appointed, in the manner herein detailed; but as the last appointments were not recorded in the county court, and a greater number appointed than that prescribed by the statute, we may say the legal title to the church property remained in the three surviving trustees. But whether it is in them or in appellees is not deemed material in this controversy ; for if they are not in fact the title-holders, they should be regarded as a committee suing by the appointment, and on behalf of the congregation, to protect it from the disturbance of others, in the use and enjoyment of their property.
In the case of Hadden and others against Chorn, &c. (8 B. Mon., 70), this court held that a committee appointed by a church or denomination of Christians might maintain an action to protect the congregation from disturbance in their rights, independent of the statute of 1835. And the Revised Statutes do not abrogate or abridge that right; and whether the persons suing be styled or call themselves trustees or a committee, cannot affect the right, and is immaterial to appellants.
The appointment doubtless was made for the express purpose of prosecuting this suit; and, according to the *223 i’uling in Hadden, &c., vs. Chorn, &c., supra, no other evidence was necessary than the entiy of their appointment on the record kept by their secretary.
In the last named case, Chorn, one of the trustees to whom the property was conveyed, had been excluded, and Farrow, another trustee, was dead, and Harmon and Garrett were appointed in their place; but the county court refused to permit their appointment to be recorded. Afterwards, a committee was appointed by the complaining paily to institute the suit, and it does not appear that there was any record of the appointment of said committee, even on the church-book — certainly it was not recorded in the county court. Still, this court decided that said committee could maintain the action. And the question was ruled in the same way in the case of Shannon, &c., vs. Frost (3 B. Mon., 353).
Nor is the case of Scott, &c., vs. Curle (9 B. Mon., 19), referred to by appellants’ counsel, in conflict with these authorities. In that case three persons, not associated together in a congregational form, and never had been so associated, attempted to'appoint Scott and Sadler trustees, who were not and had never been members of the church. The three persons from whom they derived their authority acted merely in their individual characters as members of the Bethlehem Church; and the court only decided in that case, that as Scott and Sadler, who brought the action, were not officers nor members of the Bethlehem Church, and were not themselves beneficiaries, and had not been properly appointed “ trustees or a committee for it,” they had no right to sue.
. But it is contended that the appellees had no right to bring this suit, because they have not alleged that they are members of said congregations, and do not show that they are beneficiaries under the deed; and unless *224 they be members, they could not -sue as a committee for the beneficiaries. We are not aware of any case in which it has been decided that the members of a committee, appointed to prosecute a suit of this character for a religious congregation, must be members of that congregation, nor can we perceive any reason for such an adjudication; cases plight occur where it would be altogether proper to procure the services of persons as a committee who- did not belong to the congregation ; they act as the mere agents, and it would seem as reasonable to restrict the congregation to their own membership in the selection of an attorney as thus to restrict them in the selection of a committee; but no one except a member could sue in his own individual name, because the members are the only beneficiaries under the deed. But that question need not be now decided, because the answer has supplied any omission in the petition on that point.
It is next insisted that the court below erred in admitting the published proceedings of the General Conference of the Methodist Episcopal Church, from 1840 to 1844, as evidence, without sufficient proof having been made of their authentication.
In stating the pleadings, it has already been shown that appellants admit, in their answer, that about the year 1840 a “ split” occurred in the Methodist Episcopal Church of the United States, and that a division of the church property was then agreed upon by the “great church dignitariesand although all of said proceedings were admitted as evidence, still only so mueh thereof as contained the conventional terms for dividing that great religious body was material, and was all that was read, which is designated as exhibit “ Af and made part of the deposition of Rev. G. W. Merritt, *225 who proves the same to be a true and correct copy from said published proceedings, taken from volume two of the journals, and that said extract contains “ the plan of separation” “between the Northern and Southern Churches,” and the plan under which the Methodist Episcopal Church, South was formed, and proves, inferentially at least, that the document offered and admitted was a true copy of the proceedings of the General Conference of the Methodist Episcopal Church. And the whole of it was, doubtless, admitted under the rule, that where a part of a document is produced and read by one party, the whole is to be read if the adversary require it.
But this court, in Gibson, &c., vs. Armstrong, &c. (7 B. Mon., 481), decided that the resolutions, which constitute exhibit “A” before referred to, and to which the objection now under consideration applies, were adopted in 1844 by the General Conference of the Methodist Episcopal Church; the first and second of which are copied in full, and the substance of the others stated in the opinion; and that the plan of separation, and the condition on which it was to take effect, were laid down in the first of said resolutions; that the separation was authoritatively consummated, and the Southern Conferences had, under said resolutions, assumed an independent organization, under the name of the General Conference of the Methodist Episcopal Church, South. It is true it does not appear that the evidence was objected to in that case, but it was received and acted upon, and must now be regarded as an adjudged question.
The separation of the Methodist Episcopal Church into two Methodist Episcopal Churches, the one north and the other south of a common boundary line, has been the *226 subject of much discussion, in which the whole community, more or less, felt an interest, and was an event that connected itself with, and formed a part of, the history of the country, of which no well-informed man could be ignorant, and from its notoriety, courts would take judicial notice of it without proof. (Hart vs. Bodley, Har., 98; Creighton vs. Bilbo, 1 Mon., 138.)
Finally, it is urged that the appellants, under the provisions of the deed, are entitled to the exclusive use of the property, or certainly to the use of it a part of the time, proportionate to their numbers. The provisions of ■the deed under which the property was held, which was the subject of controversy in the case of Gibson, &c., vs. Armstrong, &c., supra, are substantially the same as those in the deed under which the Ml. Olivet church property was held. The court said, in that case, “ the original Methodist Episcopal Church has been authoritatively divided into two Methodist Episcopal Churches, the one north and the other south of a common boundary line, which, according to the plan of separation, limits the extent and jurisdiction of each; that each, within its own limits, is the lawful successor and representative of the original church, possessing all its jurisdiction, and entitled to its name; that neither has any more right to exceed those limits than the other; that the Southern Church, retaining the same faith, doctrine, and discipline, and assuming the same organization and name as the original church, is not only a Methodist Episcopal Church, but is in fact, to the South, the Methodist Episcopal Church as truly as the other church is so to the North, and is not the less so by the addition of the word South to designate its locality.”
“The difference in name makes no difference in character or authority.” According to the plan of division, *227 the local societies in Kentucky passed to the Methodist Episcopal Church, South, except those bordering on the Ohio river, which were permitted to determine the question, whether they would go north or south, by a vote of the respective societies. The congregation at Mt. Olivet adhered to the M. E. Church, South, acknowledged its jurisdiction, and received its preachers from the Kentucky Conferences for more than twenty years without complaint or objection, a portion of which time appellant Humphrey served them as their minister, being then a member of the Kentucky Conference, by which conference he was sent to them. Rut a short time before this action was brought he withdrew from the Kentucky Conference, of which he notified Coleman, the minister then preaching to said congregation, by writing bearing date the 25th October, 1866; and he, with a few who withdrew about that time from the congregation, rejects the Kentucky Conference, and professes an adherence to the .Methodist Episcopal Church. After discussing the question at length, in the opinion referred to, this court, in conclusion, said: The property conveyed and held for the use of the members of the original society, as members of the Methodist Episcopal Church, having, by the deed, been subjected to the same authority and laws to which the society and its members, entitled to the use, were subject, it follows that the same legislation, and the action under it, which have determined the true position and relation of the society entitled to the use, have also determined the authority to which the use itself is properly subject, and have placed the use under the jurisdiction and legislation of the Southern Church, and adjudged the majority, with their preacher from the Kentucky Conference, entitled to the use of the property to the exclusion of the minority. Although the opinion quoted *228 from was delivered prior to the adoption of the Revised Statutes, still the previous statutes, upon the point under consideration, were not materially changed thereby, and the determination in that case must be regarded as conclusive of this.
Wherefore, the judgment is affirmed.