Wasson, Treasurer, v. The First National Bank of Indianapolis.

No. 11,609.

WASSON, TREASURER, v. THE FIRST NATIONAL BANK OF INDIANAPOLIS.

TAXES.—*Deduction of Debts from Moneyed Capital.*—*National Bank Stock.*—. *Discrimination.*—Where the tax law of a State allows taxpayers to deduct their debts from the assessed value of a class of credits which constitute a material portion of the moneyed capital of the State in the hands of its citizens, but denies to the owners of national bank stock the right to deduct their debts from the assessed value of such stock, it is such a discrimination, in view of the provisions of section 5219, R. S. United States, relating to national banks, as renders the State law to that extent inoperative.

SAME.—*Tax Law of 1881.*—*Provision as to Deduction of Debts.*—*Material Discrimination.*—*Judicial Notice.*—Under the tax law of 1881, a taxpayer may deduct his *bona fide* debts from all his moneyed capital and credits, except money on hand or on deposit, money loaned, bonds, and shares of stock in corporations, and the courts will take judicial notice of the fact that the moneyed capital from which the taxpayer may so deduct his debts is a material portion of the whole moneyed capital of the State.

SAME.—*Debts May be Deducted from Assessed Value of National Bank Stock.*—In the assessment and taxation of shares of national bank stock, the owners thereof, if they have no other moneyed capital or credits from which to deduct their *bona fide* debts, are entitled to deduct them from the assessed value of such shares of stock, notwithstanding the provisions of the tax law of 1881.

SAME.—*"Money at Interest."*—*"Money Loaned."*—The phrase " money at interest," as used in the tax law of 1881, is the equivalent of " money loaned."

SAME.—*Schedule Controls in Case of Conflict.*—The schedule provided by the tax law controls in case of conflict with any other portion of that law.

SUPREME COURT.— *Rehearing.*— *Practice.*— The Supreme Court will not grant a rehearing on questions not urged in argument before the decision in the cause, and, in this case, such questions will not be considered after a rehearing has been granted on other grounds.

From the Marion Superior Court.

*W. W. Woollen, S. Claypool, W. A. Ketcham* and *F. T. Hord*, Attorney General, for appellant.

*R. Hill, R. N. Lamb, A. L. Mason, R. B. Duncan, J. S. Duncan, C. W. Smith, J. R. Wilson* and *W. H. H. Miller*, for appellee.

ZOLLARS, J.—It is well settled that this court will not grant a rehearing upon grounds not urged in argument preceding the decisions. *Board, etc.,* v. *Center Tp.*, 105 Ind. 422, and cases there cited.

The main question presented by the record in this case is an important one. A rehearing was granted, and an oral argument solicited by the court upon that question.

It is now urged that the complaint is technically defective. These objections were not urged in argument prior to the former decision, and as a rehearing would not have been granted on account of them, we think that in this particular case, they should not enter into the decision. Without intending to commit the court in the way of a ruling, we may say in passing, that if we were to write upon those questions, as at present advised, we should feel constrained to hold that the objections are not well taken. If, however, appellant is correct in his contention, he may make available what he now urges by way of an answer below.

The one important question presented by the record is this: In the assessment and taxation of shares of national bank stock, are the owners thereof, having no other credits or moneyed capital from which to deduct their *bona fide* debts, entitled to deduct them from the assessed value of such shares of stock? The law of this State provides, that in the assessment and taxation of what in the statute is denominated credits, the individual taxpayer, as owner thereof, may deduct therefrom his *bona fide* debts, except debts of certain designated classes. R. S. 1881, sections 6332, 6333, 6336.

The first question for decision is: From what credits may

such debts be deducted by the individual taxpayer, and what does the word "credit" include?

The statute further provides, that the assessor shall furnish to the taxpayer blanks upon which he shall furnish a list of his personal property of every description owned by him on the first day of April.   Section 6330, R. S. 1881.

So far as material here, section 6332, is as follows: "In making out the statement, each person shall put down the credits due and owing from any person or corporation, whether in or out of the county, separately from the rest of his personal property; and every credit for a sum certain, payable either in money or labor, shall be valued at a fair cash value for the sum so payable; and if for any article of property, or for labor or for services of any kind, it shall be valued at the current price of such property, labor, or services.   In making up the amount of credits which any person is required to list, for himself or for any other person, company, or corporation, he shall be entitled to deduct from the gross amount of credits the amount of all *bona fide* debts owing by such person, company, or corporation to any other person, company, or corporation, for a consideration received.   *   * Nothing in this section shall be so construed as to authorize any deductions allowed by this section to be made from the value of any other item of taxation than credits.   In making out the statement, he shall also exhibit to the assessor, for the purposes of valuation, a list of all notes, drafts, mortgages, and judgments held or owned by him; and he shall, also, for the information of the assessor, furnish him with a list containing the number and amount of all United States and State bonds, and notes and other securities of the United States not taxable, held or owned by him on said first day of April."

The taxpayer is not allowed to temporarily convert his property and money into non-taxable securities for the purpose of escaping taxation.

The above provision of the section is, perhaps, to insure

good faith in that regard, by furnishing the assessor some data from which to determine as to whether or not the taxpayer, by such conversion, has attempted to evade taxation. See, also, section 6335.

The list furnished to the taxpayer has two columns in which to set down the value of the articles of personal property or credits, etc. In one of these the taxpayer is required to set down the value, and the other is designed to be used by the assessor for a like purpose. If the value affixed by the taxpayer is satisfactory to the assessor, he may adopt it; if it is not, he may disregard it, and affix a valuation of his own.

It is required by the several sections of the statute, and especially by sections 6330 and 6336, that the taxpayer shall put down upon the list furnished to him all of his personal property, including credits due to him, of every description.

In putting down "the credits due and owing," the taxpayer is not required to itemize, but may put down the sum of them all, and his estimate of their value. In this he may be mistaken, or he may intentionally underestimate their value.

For the purpose of enabling the assessor to detect and correct the wrong, it is provided in the latter part of section 6332, *supra*, that the taxpayer shall exhibit to him a list of all notes, drafts, mortgages and judgments held or owned, etc. These are not to be furnished for the purpose of being listed by the assessor, but for the purpose of valuation. Of course, if the owner has neglected to list them, the assessor may do so, but the law contemplates a listing by the taxpayer. This all shows that notes, drafts, mortgages and judgments are all credits within the meaning of that section of the statute, and hence credits from which the designated *bona fide* debts may be deducted by the taxpayer. This, it seems to us, must be plain. The statute also provides the form of the schedule to be furnished by the assessor to the taxpayer. Section 6336. That schedule is full and specific, and was intended to, and does, provide in detail the place and manner of listing for

taxation all articles and items of personal property, including moneyed capital and credits of every description. These are to be put down opposite to numbers. The first five numbers or items are as follows:

" 1. Money on hand, or on deposit within or without this State, subject to my order, check or draft.

" 2. All moneys loaned by me, either on time or on call.

" 3. All bonds belonging to me or in which I have any interest, issued by bodies corporate, either within or without this State.

" 4. All bonds belonging to me or in which I have any interest, issued by public corporations, including State, county, city, town, and all other bonds of this class.

" 5. All shares of stock in any corporation formed outside of this State; and also all shares of stock in any corporation formed in this State, and conducting its business outside of this State."

From the above items the schedule makes no provision for deducting the designated *bona fide* debts of the taxpayers. It will be observed, also, that the above items do not include the " credits " mentioned in section 6332, *supra;* nor do they include " money at interest," except as that may be included in and as meaning the same as money loaned.

The only other number or item in the schedule material here is number or item 82, at the close of the schedule, which is as follows:

" 82. Credits (by which is meant whatever
　　　is due to the party from any other
　　　person, company, or corporation, in
　　　the shape of labor, property, or
　　　money) amounting to . . . . . $ . . . . . .
　　　　Less my *bona fide* indebtedness
　　　　(subtracted from the credits) . $ . . . . . .
　　　　Leaving a residue of credits,
　　　　amounting to . . . . . . . . . . $ . . . . "

This item in the schedule is in perfect harmony with our

Wasson, Treasurer, *v.* The First National Bank of Indianapolis.

construction of section 6332, *supra,* and embraces the same kind of credits, and none other, from which the *bona fide* debts may be deducted. It does not include the first two items in the schedule, money on hand or on deposit, and money loaned on time or on call, nor does it include the items of bonds and stocks. It, therefore, includes notes, drafts, mortgages and judgments held or owned by taxpayers, except they are to secure money loaned; amounts due them for goods and various manufactured articles sold at wholesale or retail; for materials furnished; for work and labor; for professional services ; amounts due upon public improvements; on account of lands sold, and all other credits of every description, due from any person, company or corporation, in the shape of labor, property or money, except amounts due on loans on time or on call. And this is so whether the notes, mortgages, judgments and the other items of indebtedness draw interest or not. Judgments draw interest under the provisions of our law. As a usual thing, notes and mortgages draw interest, and so, as a general thing, other accounts for goods, raw material and manufactured articles sold, draw interest after the expiration of stated periods of credit. The fact then that the credits may draw interest makes no difference under the schedule and section 6332, *supra.*

Section 6333, at first blush, seems to be in conflict with the above sections as we construe them. That section is by way of a limitation upon deductions to be made by the taxpayer. It provides that "No person, company, or corporation shall be entitled to any deduction from the amount of any bonds, stocks, money loaned, or money at interest," etc. If "money at interest," as used in the section, means anything different from "money loaned," if, in other words, it means that because accounts, notes, judgments, etc., may draw interest, they are "money at interest," then clearly the section, that far, is in conflict with the schedule and section 6332, *supra.*

It is a settled rule that in the construction of a statute, all

of its various sections and provisions must be construed together, so as to ascertain the intention of the law-makers, and make the statute in all its parts consistent as a whole. Thus construing the statute, we have no doubt that " money at interest" was used as the equivalent of " money loaned." In ordinary parlance, " money at interest" has reference more to money loaned, than to interest bearing notes and accounts received for property sold.

Section 6273, in giving a definition of the terms " personal estate" and " personal property," as used in the act, provides that they shall include, amongst other things, all rights, credits, choses in action, all bonds and stocks, all money at interest, and all other credits and investments. Here, evidently, the term " money at interest" does not mean accounts and choses in action drawing interest, but money loaned. In section 6286, the term " money loaned" is used, and not the term " money at interest." Thus the terms " money loaned" and " money at interest" seem to be used in the act as convertible terms. If, however, there were an irreconcilable conflict between section 6332 and 6336, which provides the schedule, the latter must govern.

The schedule is the summing up and putting in shape for practical use what is provided in the preceding sections. The schedule has heretofore been regarded as controlling. It was so regarded under the tax law of 1852, as amended in 1869. *Clark* v. *Carter*, 40 Ind. 190. It was so under the tax law of 1872. *Matter* v. *Campbell*, 71 Ind. 512. It may be observed in passing that the act of 1872 is materially different from the act of 1881. And so the Supreme Court of the United States, in construing the tax law of 1872, placed its decision upon the schedule. *Evansville Bank* v. *Britton*, 105 U. S. 322.

Upon an examination of the whole statute, we are clearly of the opinion that the individual taxpayer may deduct his *bona fide* debts, of the class designated in the act, from all his moneyed capital and credits, except from the classes spec-

ified in the first five items of the schedule as above set out, viz., money on hand or on deposit, money loaned, bonds, and shares of stock in corporations.

The National Bank Act provides that the shares of stock in national banks may be subjected to taxation under the laws of the State, with other personal property, "subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere." Section 5219, United States Revised Statutes.

The limitations upon the taxation of shares of national bank stock imposed by the above section are imposed in almost the same language by our statute. R. S. 1881, sections 6306, 6307.

It has been many times held by the Supreme Court of the United States, that the authority of the States to tax the shares of national bank stock is derived wholly from the above act of Congress, and that without the consent of Congress these bank stock shares could not be taxed by State authorities at all. *McCulloch* v. *Maryland*, 4 Wheat. 316; *Osborn* v. *Bank of U. S.*, 9 Wheat. 738; *Weston* v. *City Council of Charleston*, 2 Pet. 449; *People* v. *Weaver*, 100 U. S. 539.

The authority and privilege, of course, must be exercised under the limitations and restrictions imposed. The controlling questions then are, what are the limitations and restrictions imposed? What is the "moneyed capital," as used in the act?

Were we at liberty to place our own construction upon the act, we should be very strongly inclined to hold that "moneyed capital," as therein used, has reference to capital invested, as an investment for profit, whether in bonds, stocks, money loaned, or otherwise, and not to debts due to the taxpayer,

growing out of the ordinary affairs of business life. Such, substantially, is the dissenting opinion of Chief Justice WAIT, concurred in by Justice GRAY, in the case of *Evansville Bank* v. *Britton, supra.* The court in that case, however, adopted a different construction, and it is the duty of this court, as it is the duty of all State courts, to follow the construction placed upon the act by that court.

The above case arose under our assessment law of 1872, and the questions were, what is meant by "moneyed capital," as used in the above act of Congress, and whether the owner of national bank stock having the designated *bona fide* debts, might deduct them from the assessed value of the shares of stock? It was held that he could, and that "moneyed capital" includes not only bonds, stocks, and money loaned, but all credits and demands of every character in favor of the taxpayer.

Mr. Justice MILLER, speaking for the court in stating and deciding the case, said:

"The objection made to the Indiana statute is the same as that made against the New York statute; namely, that it permits the taxpayer to deduct from the sum of his credits, money at interest, or other demands, the amount of his *bona fide* indebtedness, leaving the remainder as the sum to be taxed, while it denies the same right of deduction from the cash value of bank shares.

"A distinction is attempted to be drawn between the Indiana statute and the New York statute, because the former permitted the deduction of the taxpayer's indebtedness to be made from the valuation of his personal property, while in Indiana he can only deduct it from his credits. And undoubtedly there is such a difference in the laws of the two States. But if one of them is more directly in conflict with the act of Congress than the other, it is the Indiana statute. In its schedule the subject of taxation from which the taxpayer may deduct his *bona fide* indebtedness is placed under two heads, as follows:

" ' 1. Credits or money at interest, either within or without the State, at par value.

" ' 2. All other demands against persons or bodies corporate, either within or without this State.

" ' Total amount of all credits.'

" The act of Congress does not make the tax on personal property the measure of the tax on bank shares in the State, but the tax on moneyed capital in the hands of individual citizens. Credits, money loaned at interest, and demands against persons or corporations are more purely representative of moneyed capital than personal property, so far as they can be said to differ.

" Undoubtedly there may be much personal property exempt from taxation without giving bank shares a right to similar exemption, because personal property is not necessarily moneyed capital. But the rights, credits, demands, and money at interest mentioned in the Indiana statute, from which *bona fide* debts may be deducted, all mean moneyed capital invested in that way.

" It is unnecessary to repeat the argument in *People* v. *Weaver* (100 U. S. 539) on this point. We are of opinion that the taxation of bank shares by the Indiana statute, without permitting the shareholders to deduct from their assessed value the amount of his *bona fide* indebtedness, as in the case of other investments of moneyed capital, is a discrimination forbidden by the act of Congress."

In the late case of *Boyer* v. *Boyer*, 113 U. S. 689 (20 C. L. J. 309), Mr. Justice HARLAN reviewed the cases, and from them deduced certain rules for the construction of the above section of the national bank act, the second of which is as follows:

" That a State law which permits individual citizens to deduct their just debts from the valuation of their personal property of every kind, other than national bank shares, or which permits the taxpayer to deduct from the sum of his credits, money at interest or other demands to the extent of

his *bona fide* indebtedness, leaving the remainder to be taxed, while it denies the same right of deduction from the cash value of bank shares, operates to tax the latter at a greater rate than other moneyed capital."

There can be no doubt, that, under these decisions, all credits of whatever nature, which include the credits from which the taxpayer may deduct his *bona fide* debts, as here decided, whether interest bearing or not, are moneyed capital in the sense in which that term is used in the act. And under these decisions also, statutes which allow the taxpayer to deduct his debts from such moneyed capital, and deny this right to the holders of shares of national bank stock, must yield to the paramount act of Congress which inhibits such discrimination.

But what shall be said, when the taxpayer is allowed to deduct his debts from but a part of his moneyed capital, as here held, from his money capital, other than bonds, money loaned, and shares of stock? The act of Congress, as it has been held, does not require absolute equality, as that is difficult, if not impossible, of attainment. The cases hold, however, that the intention of Congress in the enactment of the statute was not to permit any substantial discrimination in favor of moneyed capital in the hands of the taxpayer, as against capital invested in shares of national bank stock. *Boyer* v. *Boyer, supra.*

In that case, at page 693, in speaking of the case of *Hepburn* v. *School Directors,* 23 Wall. 480, HARLAN, J., said : " That case is authority for the proposition that a *partial* exemption by a State, for local purposes, of moneyed capital in the hands of individual citizens does not, of itself and without reference to the aggregate amount of moneyed capital not so exempted, establish the right to a similar exemption in favor of national bank shares held by persons within the same jurisdiction. But it is by no means an authority for the broad proposition that national bank shares may be subjected to local taxation where a very material part, relatively,

of other moneyed capital in the hands of individual citizens, within the same jurisdiction or taxing district, is exempted from such taxation." Again, at page 695, in speaking of the cases generally, it was said : " These decisions show that, in whatever form the question has arisen, this court has steadily kept in view the intention of Congress not to permit any substantial discrimination in favor of moneyed capital in the hands of individual citizens, as against capital invested in the shares of national banks." And still further, at page 701 : " But as substantial equality is attainable, and is required by the supreme law of the land, in respect of State taxation of national bank shares, when the inequality is so palpable as to show that the discrimination against capital invested in such shares is serious, the courts have no discretion but to interfere."

In that case the State of Pennsylvania had exempted from local taxation, for county purposes, mortgages, judgments, etc., and imposed such local taxes upon the shares of national bank stock. It was held that the result was a material inequality, and that the bank stock could not be taxed for such local purposes. See, also, *First Nat'l Bank* v. *Treasurer of Lucas Co.*, 25 Fed. R. 749 (U. S. Cir. Ct. N. D. Ohio) ; *Ruggles* v. *City of Fond du Lac*, 53 Wis. 436.

The California statute, as in force in 1880, provided that " In assessing solvent debts not secured by mortgage or trust deed, a reduction therefrom shall be made of debts due to *bona fide* residents of the State," but did not allow a like reduction from the assessed value of national bank stock. It will be observed that the statute, like ours, does not allow such deduction from all moneyed capital.

In the case of *Miller* v. *Heilbron*, 58 Cal. 133, after quoting from the opinion in the case of *People* v. *Weaver*, 100 U. S. 543, which involved a statute of New York allowing a deduction of debts from the value of all personal property, except from shares of National or State banks, it was said : " So far as the immediate question is concerned, there is but one

difference between the law of New York and the law of this State—a difference of degree." It was held that so far as the State statute denied the deductions to the holders of national bank stock, it was in conflict with the act of Congress.

The holding of the above cases is, that the taxing laws of States can not be upheld, as against the act of Congress, so far as they may discriminate against national bank stock, by directly exempting a portion of other moneyed capital from taxation, or by doing the same thing in allowing a deduction of debts from the assessed value of a portion of other moneyed capital, and denies the same deduction to the holders of national bank stock, when such discrimination is so palpable as to show that it is material and serious, and that when such is the case, the holders of shares of national bank stock will be allowed to deduct their debts, the same as the owners of the other moneyed capital. Our statute makes no provision for deducting debts from the assessed value of shares of national bank stock, but, as we have seen, allows such deduction from a portion of other moneyed capital, and thus discriminates against national bank stock. Is that discrimination so material and serious that the owners of such shares of stock are entitled to deduct their debts, notwithstanding the statute? That depends upon the amount of the moneyed capital from which the debts of the taxpayer may be deducted, as compared with the whole of the moneyed capital of the State. This case comes here upon a demurrer to appellee's complaint for an injunction. Unless the court may take judicial notice of the fact that the moneyed capital from which the taxpayer may deduct his debts as here decided, is a material portion of the whole moneyed capital of the State, the complaint is fatally defective, because it contains no averment as to that fact.

Our statute provides that matters of which judicial notice is taken need not be stated in a pleading. R. S. 1881, section 374. May the court take judicial notice of that fact?

As we have seen, for the purposes of taxation in the hands of the taxpayers, the whole of the moneyed capital of the State, as specified in the schedule provided by the tax law, consists of money on hand or on deposit within or without the State, money loaned, bonds issued by bodies corporate, bonds issued by public corporations, and shares of stock in corporations, which includes shares of. bank stock. For convenience, these several items may be regarded as constituting the first division of the moneyed capital of the State. From the assessed value of none of them can the debts of the taxpayer be deducted.

Another division includes all other moneyed capital of the State, the items of which consist, as we have also seen, of notes, mortgages and judgments, except for money loaned, amounts due for goods, wares and merchandise of all kinds, raw material, farming implements, machinery and manufactured articles of all kinds, sold at wholesale or retail, amounts due for labor and professional services, amounts due upon public improvements, on account of sales of real estate, livestock, and farm products, and all other credits of every description due from any person, company or corporation, whether drawing interest or not, except as included in the first division above. These several items, from the assessed value of which debts may be deducted, may be regarded as constituting the second division of the moneyed capital of the State.

That the second division constitutes a very large and material part of the credits in the business of the State, and thus a very large and material part of the whole moneyed capital of the State, is a matter of such common knowledge as to be known to the courts. There are many things of which the courts must take judicial notice. For example, they take judicial notice of the seasons and the general course of agriculture. *Abel* v. *Alexander*, 45 Ind. 523 (15 Am. R. 270); *Tomlinson* v. *Greenfield*, 31 Ark. 557. That whiskey, beer and gin are intoxicating. *Myers* v. *State*, 93 Ind. 251;

*Eagan* v. *State*, 53 Ind. 162. That ale is malt liquor. *Wiles* v. *State*, 33 Ind. 206. Of the time it takes to go from one city to another. *Fitzpatrick* v. *Papa*, 89 Ind. 17; see, also, *Pearce* v. *Langfit*, 101 Pa. St. 507 (47 Am. R. 737). Of the geography of the country, and that a point on a railroad, one mile from Rosedale, is in Park county. *Terre Haute, etc., R. R. Co.* v. *Pierce*, 95 Ind. 496. Of the population of towns and cities. *Kalbrier* v. *Leonard*, 34 Ind. 497. Of the meaning of C. O. D. *United States Ex. Co.* v. *Keefer*, 59 Ind. 263. Of the meaning of S. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$, sec. 18, T. 21 N., R. 7 E., 40 acres. *Jordan Ditching, etc., Ass'n* v. *Wagoner*, 33 Ind. 50. *Frazer* v. *State, etc.*, 106 Ind. 471. That the use of a farm in summer is worth more than in winter. *Ross* v. *Boswell*, 60 Ind. 235. Of the duties and powers of cashiers of banks. *Farmers, etc., Bank* v. *Troy City Bank*, 1 Doug. (Mich.) 457; *LaRose* v. *Logansport Nat'l Bank*, 102 Ind. 332; *Sturges* v. *Bank of Circleville*, 11 Ohio St. 153. Of the facilities of travel between different points. *Hipes* v. *Cochran*, 13 Ind. 175; *Manning* v. *Gasharie*, 27 Ind. 399. Of the fact that there are classes of notes and bills, other than bank bills, in circulation in this State as money. *Hart* v. *State*, 55 Ind. 599. Of the general pecuniary condition of the country, as a part of the history of the times. *Ashley* v. *Martin*, 50 Ala. 537. Of the division of the Methodist Church into the Methodist Church North, and the Methodist Church South. *Humphrey* v. *Burnside*, 4 Bush (Ky.) 215 (225). That ice cream freezers had been in use before the invention for freezing dead bodies or fish. *Brown* v. *Piper*, 91 U. S. 37, 42. *Terhune* v. *Phillips*, 99 U. S. 592; *King* v. *Gallun*, 109 U. S. 99.

The courts of the State are bound to take notice, from its general history, that "during and since the war of the Rebellion, the adjutant general of this State has made records of the muster rolls of the different regiments of volunteers furnished by this State, in the military service of the United States." *Board, etc.*, v. *May*, 67 Ind. 562. Upon the gen-

eral subject of judicial knowledge, see Buskirk Pr., p. 15, et seq., and cases there cited.

Mr. Greenleaf says: "In fine, courts will generally take notice of whatever ought to be generally known within the limits of their jurisdiction." 1 Greenl. Ev., section 6, p. 12, 13; Brown v. Piper, supra.

In speaking of what courts will take judicial notice, it was said in the case of Ho Ah Kow v. Nunan, 5 Sawyer (U. S. Cir. Ct. Dis. Cal.), 552 (560): "Besides, we can not shut our eyes to matters of public notoriety and general cognizance. When we take our seats on the bench we are not struck with blindness, and forbidden to know as judges what we see as men."

To hold in the case before us, that it was necessary to aver and prove that the above second division of the moneyed capital constitutes a large and material part of the whole moneyed capital of the State, would be to hold that the courts can not know judicially what must be known to the mass of the people, and what any intelligent person would be reluctant, if not ashamed, to confess he does not know.

To say that from this division of the moneyed capital, the taxpayer may deduct his debts, and that the holders of shares of national bank stock, having no other credits from which to deduct their debts, may not deduct them from the assessed value of such shares of stock, would be to establish such an inequality and discrimination against capital invested in such shares of stock, as the act of Congress, with the interpretations given it by the Supreme Court of the United States, will not tolerate.

The statutory privilege to taxpayers, of deducting their debts from the above second division of moneyed capital, is practically to relieve the most, if not the whole, of that capital from taxation, and leave the burdens to rest upon other property, including other moneyed capital. A taxpayer having that kind of moneyed capital may have a deduction of his debts from the assessed value thereof; while another, not

having such capital, but having money on hand or on deposit, money loaned, and bonds and stocks (other than shares of national bank stock) may not have such a deduction. If there is any inequality or wrong in that, as between citizen taxpayers, it is a matter wholly for the Legislature.

The holders of shares of national bank stock are upon an equality with taxpayers having money capital of the second division above, and if, as between such holders and taxpayers owning moneyed capital of the first, and not of the second division above, there is an inequality, it is a matter for the Legislature and for Congress.

The Legislature may so shape the State laws as to result in this inequality. Against such legislation, there is no inhibition in the national bank act. Possibly, the Legislature might avoid this inequality, if it be such, by providing that taxpayers, not having shares of national bank stock, may deduct their debts from all or a certain proportion of their moneyed capital, and giving the same right to holders of shares of national bank stock to deduct their debts from a like proportion of their moneyed capital. Possibly, Congress might amend the national bank act to advantage. Doubtless, many holders of shares of national bank stock may have moneyed capital of the second division alone, and, if so, they may deduct their debts from its assessed value, and thus the privilege of deducting their debts from the shares of stock in such cases, can injure no one, as the debts can be deducted but once. That shares of national bank stock are taxed by State authority at all, is a matter of grace or license, and not of right. So the Supreme Court of the United States holds. The States, therefore, must tax shares of stock in accordance with that license.

After a thorough re-examination of the question involved, we are constrained to hold that under the averments of the complaint, the stockholders therein named are entitled to deduct their just debts from the assessed value of their shares of national bank stock.

It has been suggested, in argument, that we ought, if possible, to rule otherwise, in order that the case might go upon appeal to the Supreme Court of the United States for a decision by that tribunal. We should be glad to have the case thus appealed, but we could not make a different ruling without disregarding our deliberate judgment, and placing this court, as we think, in an attitude of insubordination and hostility to the Supreme Court of the United States. It is the province of that court to interpret the acts of Congress, and the duty of the State courts to adopt and follow such interpretation.

The court below, at special term, sustained a demurrer to the complaint. That ruling was reversed at general term.

The judgment at general term is affirmed, at appellant's cost.

ELLIOTT, J., did not participate in the decision of this case.

