TEX. & PAC. R'Y CO. ET AL. V. T. R. LOGAN.

(No. 2284.)

APPEAL from Harrison County. Opinion by WHITE, P. J.

F. H. PRENDERGAST, counsel for appellants.

BOOTY & YOUNG, counsel for appellee.

§ 186. *Judgment; must conform to the verdict and the pleadings; case stated.* Appellee ·sued the Tex. & Pac.

R'y Co. for $500, the value of a safe destroyed by said company, which safe appellee had shipped over the line of said company from Cincinnati, Ohio, to Marshall, Texas. The petition alleged that said safe, while being transported by said company, was so broken and injured as to be utterly destroyed and valueless. During the pendency of the suit, appellee made the Mo. Pac. R'y Co. a defendant, alleging that it was operating the Tex. Pac. R'y as a leased line when said safe was destroyed. Upon a trial of the case the jury rendered a verdict for appellee for $200. The court rendered judgment upon this verdict in favor of appellee for the $200 awarded by the verdict, and also for the safe. *Held:* The suit is evidently an action for damages for property totally destroyed, or injured to the extent that it was valueless, and because of such injury appellee refused to receive it, although appellants had, at their own cost, had it mended and tendered it to appellee. The action is not to recover the safe, but its value, and is in the nature of an action for a wrongful seizure and conversion of the safe. There is no prayer in the petition for the recovery of the safe, but only for damages for its destruction. It is clear that the judgment, in so far as it adjudges the safe to appellee, is not warranted by the allegations in the petition, nor by the verdict of the jury. It is therefore erroneous. [Claiborne v. Tanner, 18 Tex. 79.] "It is the province of the jury to find the facts from the evidence, and of the court to give judgment upon the findings of the jury." [Smith v. Tucker, 25 Tex. 604.] A petition must allege all the facts necessary to entitle the plaintiff to recover, and facts not alleged cannot form the basis of a recovery. [Hall v. Jackson, 3 Tex. 305; Menard v. Sydnor, 29 Tex. 257.]

§ 187. *Bill of lading; admissible, and must be produced in evidence, when; through bill makes carrier liable to end of route, and such liability is not limited by stipulation to the contrary.* It was not error to admit the bill of lading in evidence under the allegations of the peti-

tion setting forth the same as the contract between the parties, and averring that it was executed by the agent of defendants. Defendants did not deny, under oath, the execution of the same. [R. S. art. 1265, subd. 8.] Where a suit is founded upon a bill of lading, the bill of lading must be produced in evidence or its non-production must be accounted for, and its substance proved as alleged. [2 W. Con. Rep. §§ 166–169.] The bill of lading in this case is a through bill, and it is no objection to it that the original contracting carrier had limited its liability to its own line. "When a carrier has contracted for the carrying of goods over another line beyond his route, a stipulation that his responsibility is to terminate at the end of his own line will be of no effect." [2 W. Con. Rep. § 430; *ante*, §§ 34, 84; Lawson on Carriers, § 235.]

§ 188. *Judicial knowledge of the Missouri Pacific Railway system.* It was sufficiently proved at the time of the injury to the safe that the Missouri Pacific R'y Co. was controlling and operating the Texas & Pacific R'y Co. Independently of such evidence, however, this court has held that it is a matter of judicial knowledge that the "Missouri Pacific System," as it is called, operates and controls, under the same general management, several important lines of railway in Texas, and amongst them the Texas Pacific Railway. The "Missouri Pacific Railway System" is a matter of public and general notoriety in the state of Texas. It is part of the current history of the times that the system is now, and for some time past has been, operating some of the most important lines of railway in the state. These lines permeate and ramify the most important portions of the state. This system embraces the Missouri Pacific R'y Co., the Central Branch of the Union Pac. R. R., the M., K. & T. R'y, the St. Louis, I. M. & S. R'y, the Tex. & Pac. R'y and the I. & G. N. R. R. It is known in all the four quarters of the state, and hundreds of the people of the state daily travel upon and use its lines. [2 W. Con. Rep. § 679.] This current history has been made by the system itself. The

officials of its various roads wear its ·uniform; the furniture of the roads bears its impress; the business of the roads is transacted upon bills and letter-heads and en- ·velopes announcing the nature and extent of the system and the roads embraced in it. Its own officers, the public press and the people all know and speak of it as a system embracing the lines of road we have named. These roads carry on the commerce of the country under the name of the " Missouri Pacific System." Some of these roads, it is true, pretend to keep up a separate organization, but the separate organizations are composed in whole or in part of the same officers as those belonging to the management of the " Missouri Pacific System." If the public is by any possibility deceived as to the extent of this system and the roads it embraces or controls, then the system has itself alone to blame for the mistake, for it has done everything necessary to create and establish the general opinion. "It is a rule of evidence that facts of universal notoriety need not be proved." [Taylor's Ev. § 4, note 2.] Courts will take notice of whatever is generally known within the limits of their jurisdiction. [1 Greenl. Ev. § 11; 2 W. Con. Rep. § 679.] In the case of Humphrey v. Burnside, the supreme court of Kentucky say: "The separation of the Methodist Episcopal Church into two Methodist Episcopal churches, the one north and the other south of a common boundary line, has been the subject of much discussion, in which the whole community, more or less, felt an interest, and was an event that connected itself with and formed a part of the history of the country, of which no well informed man could be ignorant, and from its notoriety courts would take judicial notice of it without proof." [Creighton v. Bilbo, 4 Bush, 225, 226.] All railroads in this state are, by our constitution, declared to be "public highways," and railroad companies "common carriers." [Const. art. 10, sec. 2.] The general public are interested in these public highways of the state. They have a right to know how they are operated and controlled as

public highways; and when the management of these public highways publish to the world, and in their dealings with the public in relation thereto induce the belief, that these great public highways are controlled and operated in such and such a manner, then in reason, justice and common honesty, and in law, they should be held *estopped* from denying it. Because the judgment, so far as it adjudged the safe to appellee, is unwarranted, it is reversed and judgment is here rendered in favor of appellee for $200, interest and costs, except the costs of this appeal, which are adjudged against appellee.

November 20, 1886.       Reversed and rendered.