The City of Indianapolis v. Vajen.

Filed June 14, 1887.

———————◆———————

No. 12,469.

## THE CITY OF INDIANAPOLIS v. VAJEN.

TAXES.—*Assessment of National Bank Stock.—Right of Owner to Deduct Indebtedness.*—The owner of national bank stock is entitled to deduct from its value, if he have no other credits from which the deduction can be made, the amount of the *bona fide* debts owing by him.

SAME.—*Refusal to Allow Deduction.—Erroneous Assessment.—City.—Refunding Taxes Erroneously Collected.*—Where a taxpayer, in making his assessment list for city taxation, gives notice of his indebtedness, but does

not enter it upon his list, and demands of the assessor the right to deduct from the value of his national bank stock the amount of his *bona fide* indebtedness, which that officer refuses to allow on the ground that such deduction is not authorized by law, and afterwards makes a like demand of the city treasurer before paying his taxes, which is also refused, the assessment, to the extent of the deduction improperly denied, is erroneous, and the taxpayer is entitled to have the excess of taxes collected refunded, whether paid voluntarily or not, and without appearing before the board of equalization and there attempting to have the assessment corrected.

From the Marion Superior Court.

*C. S. Denny,* for appellant.

*J. S. Duncan, C. W. Smith* and *J. R. Wilson,* for appellee.

MITCHELL, J.—Vajen recovered a judgment against the city of Indianapolis in the court below for the amount of taxes alleged to have been erroneously assessed against and collected from him, by the city, through its officers, on account of certain shares of stock in a banking association, organized under the laws of the United States.

The facts material to be stated, as specially found by the court, are, briefly, as follows: On the 1st day of April, 1880, Vajen was the owner of 336 shares of the stock of the Citizens National Bank of Indianapolis, which stock was of the face value of $100 per share. He was at the same time indebted to an amount largely in excess of the value of his stock. In assessing national bank stock, it was the uniform habit of the city assessor to refuse permission to the plaintiff, and all other owners of national bank stock, to deduct the amount of their indebtedness from the value of their shares. Substantially, the only credits due the plaintiff at that time from which his indebtedness could have been deducted were his bank stock. The cashier of the bank made out duplicate statements, showing the number of shares comprising the capital stock of the bank and the residence of each stockholder, and the number of shares owned by each, according to the provisions of section 64, vol. 1, R. S. 1876, 89 (section

6345, R. S. 1881). After the duplicate statements had been delivered, as provided by law, the assessor proceeded to assess the shares against the several owners thereof, assessing against the plaintiff on account of the shares owned by him the sum $21,935.67. This amount was duly extended on the tax duplicate, and a tax amounting to $186.45 levied and extended against the latter on his stock for the year 1880. When the plaintiff made up his assessment list for that year he gave notice of his indebtedness, and demanded of the assessor the right to deduct from the value of his bank stock the amount of *bona fide* debts owing by him. This the assessor refused to allow, on the ground, as he claimed, that such deductions were not authorized by law. The plaintiff thereupon made return of his personal property upon the ordinary blank, without any statement thereon of his stock or indebtedness. At the proper time the tax duplicate, with the tax thereon extended, was delivered to the city treasurer for collection. Vajen at first refused to pay the tax against his bank stock. Subsequently, on the 28th day of September, 1881, after the treasurer had made demand, the plaintiff paid the tax, protesting that, for the reasons above mentioned, the taxes against his bank stock were illegally and erroneously assessed.

Similar proceedings, substantially, were had with reference to the assessment of 1881, the amount assessed for that year being $273.37. The taxes for 1881 were paid after the duplicate was delivered to the city treasurer, before any demand by the officer, the plaintiff demanding from the treasurer a deduction on account of his indebtedness, which demand was refused. In each case proper demand was made from the city by petition praying for the refunding of the taxes.

Upon the foregoing facts the court stated as its conclusions of law, that the payments were voluntarily made, but that, under the ruling in *City of Indianapolis* v. *McAvoy*, 86 Ind. 587, the plaintiff below was, nevertheless, entitled to recover from the city the several amounts thus paid.

The plaintiff below excepted to the first conclusion of law

stated by the court, and the city excepted to the second.

Error and cross error are assigned by the parties respectively. There is no controversy but that, under the ruling in *Wasson* v. *First Nat'l Bank, etc.*, 107 Ind. 206, the plaintiff was entitled to deduct his *bona fide* indebtedness from the value of his bank stock, if proper steps to that end had been taken before payment of the tax.

The questions discussed are, were the payments to the city treasurer, under the circumstances as disclosed, voluntary? and was the plaintiff entitled to recover the amounts paid, in any event, as the facts appear, whether the payments were voluntary or involuntary?

On behalf of the city, it is contended that the plaintiff had the right, and that it was his duty, to make out and return to the assessor under oath a list of his personal property, exhibiting on such list the amount of his credits, and showing the amount of his indebtedness, which he claimed the right to deduct. Having failed so to make and return his list, the argument is, that the demand made upon the assessor and treasurer to be allowed to make the deduction goes for nothing. This argument is predicated upon sections 6330 to 6334, R. S. 1881, inclusive. These sections provide for the listing and return of personal property by the owner for purposes of taxation. Provision is made for a statement by the lister of the credits due and owing him, and also that he shall be entitled to deduct from the gross amount of his credits the amount of all *bona fide* debts owing by him. The latter section provides that the assessor shall require that all deductions claimed shall be verified by the oath of the person claiming the deduction, and that the oath shall form part of the statement of the person listed. Whatever force there might be in the position contended for, under other circumstances, it is entitled to no consideration as applied to the facts in the case before us. The manner of listing and assessing bank and other corporate stocks is peculiar, as compared with the listing of other personal property. In respect

to shares in a banking corporation, section 6345, R. S. 1881, makes it the duty of the president, cashier, or other account-ing officer of each bank located within this State to make duplicate statements, under oath, showing the number of shares comprising the capital stock of the bank, and the name and residence of each stockholder, with the number of shares owned by each, and what he deems the fair cash value of each share, and the fair cash value of the entire capital stock of the bank. One of these statements is to be delivered to the township assessor, and the other to the county auditor. It is then made the duty of the assessor to list, assess and return the capital stock, in all respects the same as similar property belonging to other corporations and individuals. An examination of the list or schedule which the assessor is required to furnish each owner of personal property, as well as a consideration of the several statutes, will make it apparent that it was not contemplated that owners of bank shares, or, indeed, shares in any domestic corporation doing business within this State, should list their shares of stock with their other personal property. It would seem, therefore, that the statement of credits and the deduc-tion of indebtedness for which specific provision is made, and which is required to be verified by the oath of each owner of personal property, and returned with his assessment, is not applicable to bank shares and such deductions therefrom as the owner may be entitled to make.

The right of owners of national bank stock to deduct from its value the amount of their *bona fide* indebtedness results rather from the construction which the Supreme Court of the United States has given the law under which national bank-ing associations are organized, and the revenue laws of the States as applied to such associations, than from any specific provision to that effect in the revenue law of this State. While we may assume that the Legislature of the State, act-ing in subordination to the law of Congress, contemplated that such deductions might be made, we are compelled to

admit that no special provision is found in the statute pointing out the precise method by which that end is to be accomplished. Since, therefore, one whose moneyed capital is invested in shares in a national banking association can not put such capital down on his assessment list as credits due and owing him, and deduct therefrom his *bona fide* indebtedness, it follows that the only practical method by which he can obtain the benefit of the law is to notify the assessor, at the proper time, of the amount of his indebtedness not already deducted from other credits on his tax list, and demand that the proper reduction be made on the list which the assessor is required to make and return under section 6345. *McMahon, In re,* v. *Palmer,* 102 N. Y. 176 (55 Am. R. 796). When such a deduction is claimed, it would doubtless be the duty of the assessor to require that the amount thereof should be verified by the oath of the person claiming the deduction, as provided in section 6334. A failure to require the oath would, however, not be the default of the person making the claim.

The special findings show that the demand was duly made of the assessor, and that the latter refused to make any deduction, not because the claim was not properly made by the plaintiff on his assessment list, nor because of his failure to comply with any requirement of the assessor, but because the latter denied his right, under the law, to be allowed any deduction of indebtedness from the value of his stock. The facts found make it very clear that whatever the plaintiff might have done by way of making statements, or in whatever form he might have presented his claim for deductions, it would, in any event, have been unavailing. According to the rule, where the tender of performance is a prerequisite to the establishment of a right against another, the offer to perform becomes unnecessary when the conduct of the other party is such as to make it reasonably certain beforehand that the offer will be refused. *Hills* v. *Exchange Bank,*

105 U. S. 319; *People* v. *Olmsted*, 45 Barb. 644; *Ford* v. *Holden*, 39 N. H. 143.

The city assessor having refused to allow deductions, upon notice and demand, on the ground that no such deductions would be allowed in any case, because the law did not authorize them to be made, the city will not now be allowed to shift its position, and put its defence on the ground that the demand was not made in proper form.

The court having first reached the conclusion that, upon the facts found, the taxes were voluntarily paid, and having as its second conclusion stated that the city was, nevertheless, liable under the ruling in *City of Indianapolis* v. *McAvoy, supra,* it becomes proper first to examine the propriety of the conclusion last stated. If it be true that, whether the payment was voluntary or involuntary, the city is in either event liable to refund, it is, obviously, immaterial and unnecessary to consider the propriety of the first conclusion, which is called in question by the appellee's cross error.

It is a well established doctrine of the common law that a party who, without fraud or imposition, pays an illegal demand, having at the time knowledge of all the facts which render the demand illegal, unless payment be made upon some immediate or urgent necessity, or to release his person or property from detention, or to prevent the immediate seizure of his person or property, such payment will be deemed to have been voluntarily made. To a party who thus pays an illegal demand the common law affords no right of recovery. *Jenks* v. *Lima Tp.*, 17 Ind. 326; *Lima Tp.* v. *Jenks*, 20 Ind. 301; *Town of Ligonier* v. *Ackerman*, 46 Ind. 552 (15 Am. R. 323); *Board, etc.*, v. *Armstrong*, 91 Ind. 528; *Board, etc.*, v. *Ruckman*, 57 Ind. 96; *Lamborn* v. *County Com'rs*, 97 U. S. 181; *Railroad Co.* v. *Commissioners*, 98 U. S. 541; *Union Ins. Co.* v. *City of Allegheny*, 101 Pa. St. 250.

It should be observed, however, that the rule of the common law does not control in cases where a positive statute

makes it the duty of a municipal corporation to refund to the taxpayer money collected for taxes wrongfully or erroneously assessed. In case it is so directed by statute, it becomes the duty of the corporation to refund money received by it for taxes assessed upon property which, according to law, was not justly subject to the assessment, and it is no defence in such a case that the taxes were voluntarily paid. In such a case the question will be whether or not, according to the facts of which the assessing officer had notice, or with which the law charged him with knowledge, the property was justly subject to the tax assessed against it. Mere irregularity will not make the assessment wrongful or erroneous in such sense as to make the corporation liable to refund. Where, however, the property was not subject to the tax, and the corporation has, hence, no equitable right to the money it has received, it may be compelled to refund, when that duty is enjoined by statute. *City of Indianapolis* v. *McAvoy, supra; Board, etc.,* v. *Graham,* 98 Ind. 279; *Newsom* v. *Board, etc.,* 92 Ind. 229; *Board, etc.,* v. *Ruckman,* 57 Ind. 96; *Durham* v. *Board, etc.,* 95 Ind. 182; *Board, etc.,* v. *Murphy,* 100 Ind. 570; *Board, etc.,* v. *Armstrong,* 91 Ind. 528; *People, ex rel.,* v. *Supervisors, etc.,* 51 N. Y. 401.

Section 3157, R. S. 1881, being a part of the general law for the incorporation and government of cities, provides, among other things, that the common council may at any time order the amount of taxes erroneously assessed against and collected from any taxpayer to be refunded to him. In respect to the refunding of taxes, this provision has been held mandatory. *City of Indianapolis* v. *McAvoy, supra.*

As has already been seen, the taxes against the appellee's bank stock were erroneously assessed, in that the assessor refused, after proper notice and demand, to allow any deduction from the value of the stock on account of the *bona fide* indebtedness of the owner. It was the assessor's duty to assess and return the bank stock, from the duplicate schedule furnished him, according to the provisions of the statute, and

if the owner had permitted the assessment and return to be completed, without notifying the assessing officer that he claimed and was entitled to a deduction from the value of his stock on account of *bona fide* debts owing by him, it might be a question whether he could have thereafter challenged it as erroneous. The assessment would have been within the authority of the assessor, and not erroneous. Where, however, the officer receives proper notice, while the assessment is *in fieri*, that the shareholder owes *bona fide* debts, which he is entitled to have deducted from the value of his stock, it then becomes the duty of the assessor to allow such deductions in the same manner and under the same regulations as deductions are allowed in respect to other credits belonging to individuals. If the assessing officer afterwards proceeds in disregard of such notice and demand, the assessment will be erroneous to the extent that deductions to which the taxpayer is justly entitled are denied. *Supervisors v. Stanley*, 105 U. S. 305.

It appears from the special finding, that the appellee notified the assessor on each occasion, when he returned his list, that his indebtedness was largely in excess of his other credits, and demanded that it should be deducted from the value of his bank shares. The notice and demand were disregarded, on the ground that the law did not allow such deductions to be made, and not because of any informality in giving notice. The appellee was accordingly assessed for the full value of his stock without any deduction. This was an erroneous assessment. Taxes were paid to the city collector which were not justly due to the city, and the case, therefore, comes within the very terms of the statute which requires taxes so assessed and collected to be refunded. The city was not exonerated from the duty of refunding because the appellee did not appear before the board of equalization and there attempt to have the erroneous assessment corrected. The taxes were erroneously assessed. An erroneous assessment and collection are the conditions which

require the city to refund. The existence of these conditions was found, and the city is liable.

The judgment is affirmed, with costs.

