FIRST NATIONAL BANK OF RICHMOND *v.* TURNER, TREASURER.

[No. 19,251. Filed April 20, 1900.]

TAXATION.—*National Bank Stock.*—*Deduction of Indebtedness of Shareholder.*—The owner of stock in a national bank is not entitled to a deduction of his *bona fide* indebtedness from the assessed valuation of his stock for the purpose of taxation.

From the Wayne Circuit Court. *Affirmed.*

*J. S. Reeves*, for appellant.

*W. L. Taylor*, Attorney-General, *Merrill Moores*, *C. C. Hadley* and *P. J. Freeman*, for appellee.

BAKER, J.—Appellant sought to enjoin appellee from collecting certain taxes, alleged to be illegal and excessive.

The complaint alleges in substance that appellant is a duly incorporated national bank, doing business at Richmond, having a capital of $150,000 divided into shares of $100; that appellee is the county treasurer; that appellant made out a return for taxation for 1899, and the assessor valued the shares at $80 each; that certain persons owned shares and were indebted in various sums in excess of the amount of credits from which their debts could be deducted; that the debts were for consideration received; that each of these shareholders demanded of the assessor that his *bona fide* indebtedness be deducted from the assessed value of his stock; that the assessor, the auditor and the county board of review refused to allow such deductions to be made, and the auditor computed the State and county taxes for 1899 upon the full assessed valuation, and delivered the tax duplicate to appellee; that all taxes rightfully due upon these shares have been paid, that is, the taxes upon the difference between the assessed valuation and the shareholders' *bona fide* indebtedness; that the unpaid balance is illegal and excessive; that appellee, unless restrained, will proceed to collect the balance by levy and sale. To this complaint, a demurrer for want of facts was sustained; and appellant refused to plead further. The error assigned involves the sufficiency of the complaint.

Without the sanction of the United States Congress, no state legislature could include national bank stock within the subjects of taxation. The necessary authority is found in §5219 R. S. U. S., which reads: "Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not

be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

In *Wasson* v. *First National Bank*, 107 Ind. 206, decided June 25, 1886, this court held that the assessed valuation of national bank stock was subject to deductions for *bona fide* debts of the shareholder. The court was governed by its understanding of the construction of §5219 R. S. U. S. as given in *Evansville Bank* v. *Britton*, 105 U. S. 322, 26 L. ed. 1053, decided April 3, 1882. In the Wasson case, page 213, it was said: "Were we at liberty to place our own construction upon the act, we should be very strongly inclined to hold that 'moneyed capital', as therein used, has reference to capital invested, as an investment for profit, whether in bonds, stocks, money loaned, or otherwise, and not to debts due to the taxpayer, growing out of the ordinary affairs of business life. Such, substantially, is the dissenting opinion of Chief Justice Waite, concurred in by Justice Gray, in the case of *Evansville Bank* v. *Britton*, 105 U. S. 322. The court in that case, however, adopted a different construction, and it is the duty of this court, as it is the duty of all state courts, to follow the construction placed upon the act by that court."

In *Mercantile Bank* v. *New York*, 121 U. S. 138, 7 Sup. Ct. 826, 30 L. ed. 895, decided April 4, 1887, the Supreme Court declared that "The key to the proper interpretation of the act of Congress is its policy and purpose. The object of the law was to establish a system of national banking institutions, in order to provide a uniform and secure currency for the people, and to facilitate the operations of the

treasury of the United States.  The capital of each of the banks in this system was to be furnished entirely by private individuals; but, for the protection of the government and the people, it was required that this capital, so far as it was the security for its circulating notes, should be invested in the bonds of the United States.  These bonds were not subjects of taxation; and neither the banks themselves, nor their capital, however invested, nor the shares of stock therein held by individuals, could be taxed by the states in which they were located without the consent of Congress, being exempted from the power of the states in this respect, because these banks were means and agencies established by Congress in execution of the powers of the government of the United States.  It was deemed consistent, however, with these national uses, and otherwise expedient, to grant to the states the authority to tax them within the limits of a rule prescribed by the law.  In fixing those limits it became necessary to prohibit the states from imposing such a burden as would prevent the capital of individuals from freely seeking investment in institutions which it was the express object of the law to establish and promote.  The business of banking, including all the operations which distinguish it, might be carried on under state laws, either by corporations or private persons, and capital in the form of money might be invested and employed by individual citizens in many single and separate operations forming substantial parts of the business of banking.  A tax upon the money of individuals, invested in the form of shares of stock in national banks, would diminish their value as an investment and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal burden.  The main purpose, therefore, of Congress, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create and foster an unequal and

unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the act of Congress is to be read in the light of this policy. * * * Whether property interests in railroads, in manufacturing enterprises, in mining investments, and others of that description, are taxed or exempt from taxation in the contemplation of the law, would have no effect upon the success of national banks. There is no reason, therefore, to suppose that Congress intended, in respect to these matters, to interfere with the power and policy of the states. The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money where the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations. These are the operations in which the capital invested in national banks is employed, and it is the nature of that employment which constitutes it in the eye of this statute 'moneyed capital'. Corporations and individuals carrying on these operations do come into competition with the business of national banks, and capital in the hands of individuals thus employed is what is intended to be described by the act of Congress."

And in *First National Bank* v. *Chapman*, 173 U. S. 205, 19 Sup. Ct. 407, 43 L. ed. 669, decided February 27, 1899, it was affirmed that "The main purpose of Congress in fixing limits to state taxation on investments in national banks was to render it impossible for the state in levying such a tax to create and fix an unequal and unfriendly competition by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the act of Congress is to be read in the light

of this policy. 'Moneyed capital' does not mean all capital the value of which is measured in terms of money, neither does it necessarily include all forms of investments in which the interest of the owner is expressed in money. Shares of stock in railroad companies, mining companies, manufacturing companies and other corporations are represented by certificates showing that the owner is entitled to an interest expressed in money value in the entire capital and property of the corporation; but the property of the corporation which constitutes this invested capital may consist mainly of real and personal property which, in the hands of individuals, none would think of calling moneyed capital, and its business may not consist in any kind of dealing in money or commercial representatives of money. This statement is taken from *Mercantile Bank* v. *New York*, 121 U. S. 138, 155, 7 Sup. Ct. 896, 30 L. ed. 895. That case has been cited with approval many times, especially in *First National Bank* v. *Ayers*, 160 U. S. 660, 16 Sup. Ct. 412, 40 L. ed. 573, and in *Aberdeen Bank* v. *Chehalis County*, 166 U. S. 440, 17 Sup. Ct. 629, 41 L. ed. 1069. The result seems to be that the term 'moneyed capital,' as used in the federal statute, does not include capital which does not come into competition with the business of national banks, and that exemptions from taxation, however large, such as deposits in savings banks or moneys belonging to charitable institutions, which are exempted for reasons of public policy and not as an unfriendly discrimination as against investments in national bank shares, cannot be regarded as forbidden by the federal statute."

In coming to an understanding of the phrase "moneyed capital", it may be well that the meaning of "capital" be determined. An acceptable definition is found in *Bailey* v. *Clark*, 21 Wall. 284, 286, 22 L. ed. 651: "When used with respect to the property of a corporation or association the term has a settled meaning; it applies only to the property or means contributed by the stockholders as the fund

or basis for the business or enterprise for which the corporation or association was formed. As to them the term does not embrace temporary loans, though the moneys borrowed be directly appropriated in their business or undertakings. And when used with respect to the property of individuals in any particular business, the term has substantially the same import; it then means the property taken from other investments or uses and set apart for and invested in the special business, and in the increase, proceeds or earnings of which property beyond expenditures incurred in its use consist the profits made in the business. It does not, any more than when used with respect to corporations, embrace temporary loans made in the regular course of business. As very justly observed by the circuit judge, 'It would not satisfy the demands of common honesty, if a man engaged in business of any kind, being asked the amount of capital employed in his business, should include in his reply all the sums which, in the conduct of his business, he had borrowed and had not yet repaid.' " Under the authority of *Mercantile Bank* v. *New York*, 121 U. S. 138, and *National Bank* v. *Chapman*, 173 U. S. 205, it would seem that "moneyed capital" is capital (as defined in *Bailey* v. *Clark*, *supra*,) employed in a business in which the stock in trade, from the dealings in which profits are expected to accrue, is money, including in that term absolute money, legal substitutes for money, and commercial representatives of money.

Is national bank stock subjected by the laws of this State to taxation "at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens"? Under the laws of this State, national bank stock is considered as "moneyed capital in the hands of individuals". The individual is treated as being entitled to his proportion of the credits of the bank less his proportion of the debits of the bank, and the difference is determined to be the "moneyed capital" in his hands. Similarly, state bank stock is considered as "moneyed capital in the hands of individuals".

The individual is treated as being entitled to his proportion of the credits of the bank less his proportion of the debts of the bank, and the difference is determined to be the "moneyed capital" in his hands. Acts 1891, pp. 199, 220, §§60, 61, §§8470, 8471 Burns 1894, §§6328, 6329 Horner 1897. In both cases, the statute requires that "In making such statement of the true cash value of such shares, the credits shall be given and the *bona fide* indebtedness of such bank deducted therefrom, as in the case of individuals". The private banker or broker "who shall keep an office or other place of business, and engages in the business of lending money, receiving money on deposit, buying or selling bullion, bills of exchange, notes, bonds, stocks or other evidences of indebtedness, with a view to profit", is assessed in the same spirit, but necessarily by a different letter as there are no "shares". Section 59 of the tax law of 1891, as amended in 1895 (Acts 1895 p. 29, §8469 Burns 1894, §6327 Horner 1897), provides for a detailed return of the assets and liabilities *of the business*, and taxes the difference as the "moneyed capital" employed *in the business*. The statute is essentially the same as the Ohio statute, of which it was said in *National Bank* v. *Chapman*, 173 U. S. 205: "Under the Ohio law the shares in national and also in state banks are what is termed stocks or investments in stocks, and are not credits from which debts can be deducted. As between the holders of shares in incorporated state banks and national banks on the one hand, and unincorporated banks or bankers on the other, we find no evidence of discrimination in favor of unincorporated state banks or bankers. In regard to this latter class, there is no capital stock so-called, and section 2759 of the revised statutes therefore makes provision, in order to determine the amount to be assessed for taxation, for deducting the debts existing in the business itself from the amount of moneyed capital belonging to the bank or banker and employed in the business, and the remainder is entered on the tax book in the name of the bank or banker, and taxes assessed thereon. This does not give the unincorporated bank or banker the right to deduct

his general debts disconnected from the business of banking and not incurred therein from the remainder above mentioned. It cannot be doubted that under this section those debts which are disconnected from the banking business cannot be deducted from the aggregate amount of the capital employed therein. The debts that are incurred in the actual conduct of the business are deducted so that the real value of the capital that is employed may be determined and the taxes assessed thereon. This system is, as nearly as may be, equivalent in its results to that employed in the case of incorporated state banks and of national banks". The Nebraska statute, considered in *Bressler* v. *County of Wayne*, 32 Neb. 834, 49 N. W. 787, 13 L. R. A. 618, is also similar: "The fact that the unincorporated bank is entitled to such deduction is no valid reason why the debts of the owner of national bank stock should be deducted from the value of his shares in assessing them. National banks are assessed solely by taxing the shares of stock. In unincorporated banks there are no shares to tax, and the legislature, of necessity, was compelled to adopt a different method of taxing them by assessing the value of the capital therein invested, which is practically the difference between the value of the assets and the amount of liabilities. The shares of a national bank do not represent the assets of the bank, but rather the difference between the value of its property and its liabilities. While the method of assessing national banks is different from that by which a private bank or banker is assessed, the rule of uniformity is preserved, so that it can not be said that the law of the state requires that national banks shall be taxed at a greater rate than is imposed upon the capital invested in the state banks." So it appears that this State has made clear provisions that all of the "other moneyed capital" that is openly employed in business competitive with that of national banks shall be taxed the same as "moneyed capital" invested in national bank shares.

Under §53 of the tax law of 1891, as amended in 1899

(Acts 1899 p. 491), the individual taxpayer may deduct his *bona fide* indebtedness from his credits consisting of annuities, bonds, notes secured by mortgage, other notes, accounts, and other amounts due him except for money on deposit. Article 10, §1, of the Constitution of this State commands that "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal." In *Flower* v. *Sheridan*, 137 Ind. 28, 41, 23 L. R. A. 278, this court said: "The legislature had a right, under its provisions, to equalize these burdens by a regulation which would tend to secure a just valuation. The plan adopted was to ascertain the just value of the credits after deducting the indebtedness. Credits are, by the Constitution, property, and as such are to be taxed. Their just value is to be ascertained by subtracting the *bona fide* indebtedness from the gross amount of the notes, accounts and other choses in action, and the balance is to be returned as belonging to the individual. Surely, the difference thus found is the precise amount and just value of the credits of the party in the legal and proper sense of the term. Section 1, article 10, *supra*, does not say the gross amount of all notes, accounts, and other choses in action shall be taxed, and we can not so construe it without perverting its language and obvious meaning. Consider for a moment its practical operation under such a construction. A has an account against B for $1,000, or a debt against him for a like amount, evidenced by a promissory note. B holds an account or promissory note, evidencing a *bona fide* indebtedness against A for the same sum of money. Equity, except where one of the parties is insolvent, treats these claims as compensating each other. Neither owes nor could recover, in an action, against the other, and yet, if appellant's theory is right, $2,000 must be placed upon the tax duplicate, because the holders never met and settled or surrendered their claims. In such case,

each is a chose in action held by the party to whom it belongs, and must, under the contention of counsel, be returned to the assessor, and yet it is obvious that neither, as against the other, has a penny of credit, either in money or just value. If the owner is taxed upon such credit it is upon fiction. The tax duplicate, in this way, would be increased, but not from property of value in the State. We think the Constitution requires that property, wealth, substantial values, shall be taxed, but not imaginary values. As against an insolvent maker, the true value in money of the credit can only be taxed and so it is where a man has both credits and' debts, if there is no balance there is no sum of money due, however large the items of account upon each side may be. The items of credit upon the one side are of no value, as far as they are balanced by the debts upon the other side. If the balance is in favor of one creditor this is the exact sum of money due him as against all others, and it is the true value of his credits. Deductions and exemptions are two separate and distinct things, having no connection." The tax law of this State is intended to operate uniformly and to reach values, not amounts. It is only on the theory that credits are not necessarily capital that any deductions are allowable under our Constitution. It is not judicially known to this court what proportion of the gross amount of credits in this State, specified in §53 of the tax law, is "capital" in the hands of individual citizens; nor, if any of it is "capital", that an appreciable portion, or any at all, is "moneyed capital" employed outside of national, state and private banks, by individuals in competition with national banks.

In considering our present tax law in the light of recent decisions of the Supreme Court of the United States, the case of *Wasson* v. *First National Bank*, 107 Ind. 206, is not controlling.

Judgment affirmed.