DAVIS *v.* SEXTON, COUNTY TREASURER ET AL.

[No. 26,242. Filed March 3, 1936. Rehearing denied May 20, 1936.]

*Jones, Hammond & Buschmann, Thompson, Rabb &*

*Stevenson, William C. Harrison* and *Leo M. Gardner,* for appellant.

*James M. Ogden,* Attorney-General, *Joseph W. Hutchinson,* Deputy Attorney-General, and *Charles B. Clarke,* for appellees.

HUGHES, J.—As stated by appellant, this is an action by him, as owner of twelve shares of capital stock of the Fletcher American National Bank of Indianapolis, and fifteen shares of the capital stock of the Indiana National Bank of Indianapolis, to enjoin the auditor and treasurer of Marion county, Indiana, from receiving or collecting any tax on said shares of stock for the year 1929, on the ground that the tax was illegal and void, and in violation of the state and federal statutes, and the Constitution of the State of Indiana, and on the further ground that it was assessed in a method which violated the federal statutes with reference to taxation of national bank shares, and in violation of section 1 of Article X of the Constitution of the State of Indiana.

As further stated by the appellant, the issue in the case was whether or not section 5219 of the U. S. Revised Statutes was violated by the taxing authorities of Indiana in taxing appellant's national bank shares in that appellant's shares were taxed at a greater rate than competing moneyed capital in a substantial amount in the hands of individual shareholders, the illegal discrimination complained of arising in two particulars: (1) The taxing officials of the State of Indiana refused to permit the appellant to deduct his bona fide indebtedness from the value of his national bank shares, at the same time permitting debt deductions in favor of competing moneyed capital for a substantial amount; (2) the taxing officials of the State of Indiana discriminated against appellant's national bank shares in favor of money invested in finance and investment companies.

The action was brought in behalf of appellant and all others similarly situated against the appellees as treas-

urer and auditor of Marion county, State of Indiana, the appellant being a resident and taxpayer of Center township, Marion county, Indianapolis, Indiana.

The appellant relies for reversal upon the alleged error of the court in its conclusions of law Nos. 1, 2, 3, 4, 5, and 6, and in overruling appellant's motion for a new trial. He alleges in his motion for a new trial that the decision of the court is not sustained by sufficient evidence, and is contrary to law.

At the request of the parties, the court made special findings of fact, and stated its conclusions of law thereon. The findings of fact are very long, and we will only state so much thereof as we think is vital to the conclusion to be reached in the opinion.

"No. 5½. That plaintiff's said shares in each of said banks were not assessed at a value in excess of their true cash value exclusive of real estate owned by said banks, as of March 1, 1929."

"No. 11. That in the ten-year period immediately preceding March 1, 1929, there were organized and doing business in Marion County, Indiana, a number of finance companies; that their capital was obtained by the sale of their common and preferred stock, which stock was largely owned and held by individual citizens of Marion County, Indiana. That the business of these companies consisted of loaning money to automobile dealers, merchants and individual citizens in the locality in which The Fletcher American National Bank of Indianapolis and The Indiana National Bank of Indianapolis did business. That these loans were made upon the security of interest-bearing conditional sales contracts, and in a few instances chattel mortgages, or by the purchases of such conditional sales contracts or mortgages at a discount. Substantially all of the conditional sales contracts or mortgages so purchased bore the endorsement of the vendor.

"That for a number of years immediately preceding March 1, 1929, there were organized and doing business in Marion County, Indiana, a number of investment companies; that on March 1,

1929, they were doing business in the same locality in which the national banks located in Marion County, Indiana, were doing business. That they obtained their capital from the sale of common and preferred stock, which stock was largely owned and held by individual citizens of Marion County, Indiana. That these investment companies were largely domestic corporations whose business consisted of the investment of their capital and surplus in industrial, railroad, public service, municipal and foreign government bonds; that these bonds are of the character extensively dealt in by the national banks of the county. That they also invested their capital in commercial paper of the type and kind extensively invested in by the national banks of the county. That a large part of the business of such companies was the underwriting of security issues. That many of these investment companies were customers of the national banks situated in Marion County and often borrowed money from such banks and pledged as collateral to secure the repayment of such loans some of the securities which they had underwritten for business enterprises. That they often bid against national banks situated in the county for the purchase of municipal and government securities in which national banks normally invested their funds.

"That on March 1, 1929, twenty-four of approximately fifty finance and investment companies doing business as described in this finding in their statements delivered to the county assessor scheduled capital stock and surplus in the amount of $8,866,760.49 and assets in the amount of $24,027,823.52, of which $2,665,898.81 was invested in real estate. That the capital and surplus of such companies was substantial in amount when compared with the capitalization of the national banks located in Marion County, Indiana.

"That the capital of said finance and investment companies so employed as in this finding set forth was in actual and substantial competition with the capital of The Indiana National Bank and Fletcher American National Bank, which in substantial amount was commonly employed in transactions similar in character to the transactions of said finance and investment companies as in this number found."

The conclusions of law are as follows:

"1. The tax imposed on plaintiff's shares of the Indiana National Bank and the Fletcher American National Bank was not at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens of the State of Indiana coming into competition with the business of said banks and other national banks.

"2. That the $95,130.45 taxes imposed in the name of Indiana National Bank was a valid tax against the 20,000 shares of said bank including plaintiff's shares and that the $68,600.03 taxes imposed in the name of Fletcher American National Bank was a valid tax against the 40,000 shares of said bank including plaintiff's shares.

"3. That of the tax of $95,130.45 imposed in the name of Indiana National Bank plaintiff was legally liable in the sum of $71.32 on account of his ownership of 15 shares of said bank, and that he remains legally liable in the sum of $35.68, the amount of said sum of $71.32 unpaid and the collection of which has been heretofore restrained; that of the tax of $68,600.03 imposed in the name of the Fletcher American National Bank, plaintiff was legally liable in the sum of $20.58, on account of his ownership of 12 shares of said bank, and that he remains legally liable in the sum of $10.29, the amount of said sum of $20.58 unpaid and the collection of which has been heretofore restrained.

"4. That the temporary injunction heretofore entered herein should be dissolved.

"5. That the plaintiff should take nothing and be given no equitable relief under his petition.

"6. That the defendants are entitled to recover their costs in these proceedings."

To each of the above conclusions of law, the appellant at the time separately and severally excepted.

The appellant states and discusses five propositions of law for a reversal of the judgment. They are as follows:

"PROPOSITION I. The tax against appellant's shares was illegal and void as violative of Section 5219, United States Revised Statutes, because the shares were taxed at a greater rate than compet-

ing moneyed capital in a substantial amount in the hands of individual citizens invested in shares of finance and investment companies.

"PROPOSITION II. The tax against appellant's shares was illegal and void because competing moneyed capital in a substantial amount in the hands of individual citizens received favorable discrimination in taxation by reason of being allowed debt deduction, which right was denied to capital invested in shares of national banks.

"PROPOSITION III. The decision of the trial court was contrary to law in that the court failed to find certain facts and embody them in its special findings of facts.

"PROPOSITION IV. Chapter 260 of the Acts of 1921 of Indiana, approved March 11, 1921, being 'An act concerning taxation, defining credits, authorizing taxpayers to deduct their indebtedness from such credits when listing their properties for taxation, and exempting annuities paid by non-state educational institutions on endowments and declaring an emergency,' is unconstitutional in that it violates Section 1, Article 10, of the Constitution of the State of Indiana, which provides that 'the general assembly shall provide, by law, for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for municipal, educational, literary, scientific, religious or charitable purposes, as may be especially exempted by law.' The court, in permitting competing moneyed capital to enjoy debt deduction as provided by statute, violated the constitutional mandate to the effect that there should be a uniform and equal rate of assessment. The decision of the trial court in holding the tax against appellant's shares to be valid, was therefore erroneous.

"PROPOSITION V. Chapter 260 of the Acts of 1921 of Indiana, approved March 11, 1921, being 'An act concerning taxation, defining credits, authorizing taxpayers to deduct their indebtedness from such credits when listing their properties for taxation, and exempting annuities paid by non-state institutions on endowments and declaring an emergency,' is unconstitutional in that it violates §5219 of the United States Revised Statutes, which

provides that national bank shares shall not be taxed at a greater rate than competing moneyed capital in the hands of individual citizens. The court, in permitting competing moneyed capital to enjoy debt deduction as provided by the aforesaid Indiana statute, violated the federal statute above set forth, in that it held the same to be constitutional."

It is conceded that national banks, being agents and instrumentalities of the federal government, cannot be taxed without the consent of Congress. Consent has been given to the states to tax national banks.

The first federal statute authorizing the state to tax shares of stock in a national bank was enacted in 1864, §5219, Revised Statutes of the United States (2d ed.) 1878. This act was amended in 1923, and, so far as is pertinent to the instant case, is as follows:

"(b)   In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks: *Provided*, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section." U. S. Statutes at Large, vol. 42, ch. 267, p. 1499, part 1.

We shall set out such sections and parts of sections of the statutes of this state governing the taxation of banks, which are especially applicable here. Section 14113, Burns' Ann. Ind. St. 1926, provides:

"Taxation of stock.—The shares of capital or capital stock of any bank, banking association or trust company located within this state, whether organized under the laws of this state or (of) the United States, or of any other state or country, shall be assessed to the owner thereof in the township, city or town where such bank, banking association or trust company is located, and shall be

taxed at the same rate as other property in the same locality is taxed and with reference to its value on the first day of March of the current year."

Section 14117, Burns' Ann. Ind. St. 1926, provides:

". . . Whenever any such bank, banking association or trust company, or mortgage guarantee company, individual, partnership or unincorporated association shall have acquired an ownership in real estate so much of value of such investment in real estate as may be carried in the capital stock account (capital stock, surplus or undivided profit accounts) on the first day of March of the current year and shown in the statement of assets and liabilities to be filed as herein provided, shall be deducted from the valuation of the capital stock of such bank, banking association, or trust company, or mortgage guarantee company, individual, partnership or unincorporated association.

"In making such statement of the true cash value of such shares, the credits shall be given and the bona fide indebtedness of such bank, banking association or trust company or mortgage guarantee company, individual, partnership or unincorporated association shall be deducted therefrom as in the case of individuals; and in giving such credits and such deductions, such bank, banking association or trust company, or mortgage guarantee company, individual, partnership or unincorporated association shall file a true statement of all the assets and the liabilities of such bank, banking association or trust company, or mortgage guarantee company, individual, partnership or unincorporated association the same as carried in its daily statement or balance sheet as of said first day of March of the current year. . . ."

The law governing the assessment of investment and finance companies is found in sections 14148 and 14149, Burns' Ann. Ind. St. 1926 (§§64-723, 64-724, Burns 1933, §§15637, 15638, Baldwin's 1934). Section 14148 is as follows:

"Every manufacturing, mining, gravel road, plank road, savings bank, insurance and other associations incorporated under the laws of this state (other than railroad companies and those hereto-

fore specifically designated) shall, by its president or other proper accounting officer, between the first day of March and the fifteenth day of May of the current year, in addition to the other property required by this act to be listed, make out and deliver to the county assessor a sworn statement in duplicate of the amount of its capital stock, setting forth particularly:

"First. The name and location of the company or association.

"Second. The amount of capital stock authorized, and the number of shares in which such capital stock is divided.

"Third. The amount of capital stock paid up.

"Fourth. The market value, or if no market value, then the true cash value of the shares of stock.

"Fifth. The total amount of indebtedness, except the indebtedness for current expenses, excluding from such expenses the amount paid for the purchase or improvement of property.

"Sixth. The value of all tangible property.

"Seventh. The difference in value between all tangible property and the capital stock.

"Eighth. The name and value of each franchise or privilege owned or enjoyed by such corporation.

"Ninth. The amount of the surplus or reserve fund of said corporation and any other information that the state board of tax commissioners may require to aid in determining valuation and the state board of tax commissioners shall have the power to add to or change the form of the statement from time to time as it may deem necessary."

Section 14149 is as follows:

"Such statements shall be scheduled in duplicate by the county assessor, and such schedule and duplicate, with the statement and duplicate so scheduled, shall be returned by the county assessor to the county auditor. The auditor shall annually, on the meeting of the county board of review, lay before said board the schedule and statements herein required to be returned to him, and the said auditor shall immediately forward to the state board of tax commissioners the duplicate statements and duplicate schedules. The county board of review shall value and assess the capital stock and all fran-

chises and privileges of such companies or associations in the manner provided in this act, and the said auditor shall compute and extend the taxes for all purposes on the respective amounts so assessed, the same as may be levied on other property in such towns, cities or other localities in which such companies or associations are located. In all cases where the capital stock of any such corporation exceeds in value that of the tangible property listed for taxation, as reviewed by the county board of review, then such capital stock shall be subject to taxation upon such excess of value; where no tangible property is returned or found, and the capital stock has a value, it shall be assessed for its true cash value. But where the capital stock, or any part thereof, is invested in tangible property, returned for taxation, such capital stock shall not be assessed to the extent that it is so invested. For the purpose of determining the actual value of said shares of stock, the said county board of review may take into consideration the market value of said shares of stock, the dividends paid by and the earning capacity of said corporation or association, and all other facts and circumstances in relation to the actual value of said shares of stock. Every franchise or privilege of any such corporation shall likewise be assessed at its true cash value."

Another section of the law pertaining to taxation which is involved in the present case is §14103, Burns' Ann. Ind. St. 1926:

"Annuities, royalties, bonds (not exempt under state or federal law), real estate bonds, mortgage certificates, conditional sales contracts, accounts due or to become due, notes secured by mortgage, including interest due thereon, all other notes, including interest due thereon, shares in building and loan associations, interest on tax exempt bonds, dividends declared but not paid, money on deposit with banks, trust companies or loan and deposit companies, due, owing to, or held by any taxpayer, and all other amounts due from any person, firm or corporation, shall be considered as credits, and, upon return of his property for taxation, he shall be entitled to deduct therefrom any bona fide indebtedness he may owe, and he shall be assessed for

taxation for only such balance of such credits as may remain after such deduction."

What is meant by moneyed capital? In the case of *Mercantile Bank* v. *New York* (1887), 121 U. S. 138, 156, 7 Sup. Ct. 836, the court discusses this subject thoroughly, and gives an illustration of what moneyed capital is in the following words:

"The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money where the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations. These are the operations in which the capital invested in national banks is employed, and it is the nature of that employment which constitutes it in the eye of this statute 'moneyed capital.' Corporations and individuals carrying on these operations do come into competition with the business of national banks, and capital in the hands of individuals thus employed is what is intended to be described by the act of Congress. That the words of the law must be so limited appears from another consideration; they do not embrace any moneyed capital in the sense just defined, except that in the hands of individual citizens. This excludes moneyed capital in the hands of corporations, although the business of some corporations may be such as to make the shares therein belonging to individuals moneyed capital in their hands, as in the case of banks. A railroad company, a mining company, an insurance company, or any other corporation of that description, may have a large part of its capital invested in securities payable in money, and so may be the owners of moneyed capital; but, as we have already seen, the shares of stock in such companies held by individuals are not moneyed capital. . . ." (p. 155). ". . . 'moneyed capital' does not mean all capital the value of which is measured in terms of money. In this sense, all kinds of real and personal property would be embraced by it, for they all have an estimated value as the subjects of sale. Neither does it

necessarily include all forms of investment in which the interest of the owner is expressed in money. Shares of stock in railroad companies, mining companies, manufacturing companies, and other corporations, are represented by certificates showing that the owner is entitled to an interest, expressed in money value, in the entire capital and property of the corporation, but the property of the corporation which constitutes its invested capital may consist mainly of real and personal property, which, in the hands of individuals, no one would think of calling moneyed capital, and its business may not consist in any kind of dealing in money, or commercial representatives of money."

The main purpose of the provision found in the federal statute, that the taxation of shares of the national banks "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of the national banks," is well established in the case of *Des Moines National Bank* v. *Fairweather, Mayor et al.* (1923), 263 U. S. 103, 116, 44 Sup. Ct. 23, where it was said:

"Its main purpose is to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a business similar to that of national banks or engaging in operations and investments of a like character; and the restriction comprehends a discrimination effected through rules for fixing valuations quite as much as one effected by using different percentages in computing taxes on fixed valuations."

In the case of *First National Bank of Aberdeen* v. *County of Chehalis* (1897), 166 U. S. 440, 457, 17 Sup. Ct. 629, the court said:

"The main purpose, therefore, of Congress, in fixing limits to state taxation, on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals

carrying on a similar business and operations and investments of a like character. The language of the act of Congress is to be read in the light of this policy."

In the case of *First National Bank of Wellington* v. *Chapman* (1899), 173 U. S. 205, 214, 19 Sup. Ct. 407, it was said:

"The result seems to be that the term 'moneyed capital,' as used in the Federal statutes, does not include capital which does not come into competition with the business of national banks, and that exemptions from taxation, however large, such as deposits in savings banks or of moneys belonging to charitable institutions, which are exempted for reasons of public policy and not as an unfriendly discrimination as against investments in national bank shares, cannot be regarded as forbidden by the Federal statute."

Many other cases decided by the United States Supreme Court prior to the amendment of 1923 must now be considered in the light of the provision of the amendment that bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business, and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital.

In view of the federal and state statutes heretofore set out, and the interpretation of the federal statute by the Supreme Court of the United States, we will consider the propositions as presented by appellant and appellees herein.

It must be conceded that the burden was upon the appellant to prove that his shares of stock were taxed at a greater rate than other moneyed capital in the hands of individual citizens of the state coming into substantial competition with the business of the national banks whose shares he owned.

Unless this was done, the appellant must fail in his appeal.

We cannot agree with appellant as to his third proposition. We have carefully read all of the evidence in the record, and we cannot say that the court failed to set out in its special findings of fact certain facts which were material to the issue, and which were supported by uncontroverted testimony. We think the findings considered as a whole fairly include the facts as shown by the evidence, and present all the issues in the case necessary to be decided.

The first proposition of appellant is that the tax against appellant's shares was illegal and void as in violation of section 5219 and amendments of the United States Statutes, because the shares were taxed at a greater rate than competing moneyed capital in a substantial amount in the hands of individual citizens invested in shares of finance and investment companies.

We cannot say, as appellant says, that there is no conflict in the evidence in the case. There is a conflict in the evidence as to whether or not finance and investment companies are in competition with national banks, and whether or not their business is similar to the business of national banks. Witnesses, Haddath, Hilkene, Burck, and Flynn, for appellant, testified that the business of these companies was not similar in all respects to the business of national banks. Mr. Hilkene, vice-president of the Fletcher American National Bank, stated that his bank did not invite that type of business, and that no substantial amount of its capital was invested in the character of loans that are handled by finance companies. Mr. Burck of the Indiana National Bank stated that the business of finance companies was largely embraced in what is known as installment paper, and that no substantial amount of their capital was

invested in that class of paper, and that the bank did not deal in that class of paper. Mr. Wolcott, for the appellee, testified that neither do the loans of building and loan associations come into competition with national banks, nor do finance companies.

There is no similarity in the business done by finance companies and national banks in the sense prohibited by the federal statute, and very little in investment companies.

"The business of banking . . . consists in the issue of notes payable on demand, intended to circulate as money where the banks are banks of issue, in receiving deposits payable on demand; in discount-, ing commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations." *Mercantile Bank* v. *New York, supra* (p. 156).

These broad powers given to national banks are not given to finance and investment companies. While some activities of investment companies may be similar to those of the banks, they are not such as are contemplated in the federal statute. They certainly cannot be considered in competition with national banks.

It appears from the special findings, and especially from finding number 5, that the shares of stock of the national banks heretofore mentioned were assessed and taxed at their cash value, and pursuant to the taxing laws of Indiana; and finding number 5½ specifically found that appellant's shares in each of said banks were not assessed at a value in excess of their true cash value, exclusive of the real estate owned by said banks as of March 1, 1928. We fail to find the true cash value of stock in either the finance or investment company, or the moneyed capital therein. Furthermore, we are not informed, and it is not found,

whether the moneyed capital left unassessed, as claimed by appellant, was, as to any material portion thereof, moneyed capital coming into competition with national banks.

In finding number 11, it was found that the capital of the finance and investment companies was in actual and substantial competition with the capital of the Indiana National Bank, and Fletcher National Bank, which in substantial amount was commonly employed in transactions similar in character to the transactions of finance and investment companies. It was not found in this finding, however, or in any other, nor was there any evidence, as to the amount of "moneyed capital" in these companies. Nor was there any finding that the tax on the "moneyed capital" in these companies was assessed at a less rate than that imposed upon the "moneyed capital" in national banks. In other words, there was no finding or showing that the tax on shares was at a greater rate than that imposed upon said companies. So, if it be conceded that the "moneyed capital" of these companies came into competition with national banks, unless there was a discrimination in the rate of assessment, the banks could not complain; and we hold that there was no discrimination shown.

The second proposition of appellant is that the tax against appellant's bank shares was illegal and void, because competing moneyed capital in a substantial amount in the hands of individual citizens received favorable discrimination in taxation by reason of being allowed debt deductions, which right was denied to capital invested in shares of national banks.

Credits for tax returns are defined in section 14103, Burns' Ann. Ind. St. 1926, *supra*. From such credits any bona fide indebtedness may be deducted by a taxpayer, and he shall be assessed for only such balance of such credits as may remain after such deduction.

It must be remembered that we are interpreting the meaning of the federal statute, which says that the tax on bank shares shall not be taxed at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks. This is the test, and unless there is a discrimination, then there can be no complaint by the national banks.

Are the credits from which bona fide indebtedness may be deducted in Indiana "moneyed capital," as contemplated in the federal statute? We do not think so. We shall now consider credits as mentioned and set out in §14103, *supra*, to determine whether or not they are moneyed capital that comes in competition with bank shares of national banks.

There can be no question that annuities have no relation to or bearing on banking, nor coming in competition therewith, any more than any form of insurance. *Mercantile Bank* v. *New York, supra*. Bonds and notes are specifically declared not to be moneyed capital under the amendment to section 5219, *supra*. Royalties are not moneyed capital in competition with national banks, nor are accounts. National banks do not sell on credit, nor purchase, nor discount accounts. Nor is it the customary business of national banks to deal in conditional sale contracts. Money on deposit, checks, and drafts are not moneyed capital in competition with national banks, and clearly not considered so under the amendment of the statute. Shares in building and loan associations under the decisions of the federal courts and Supreme Court of the United States are not moneyed capital, and deductions for indebtedness may be made.

In the case of *Mercantile National Bank of Cleveland, Ohio* v. *Hubbard* (1899), 98 Fed. 465, 471, Judge Taft stated:

". . . under the decision of *Mercantile Bank* v. *City of New York*, 121 U. S. 138, 7 Sup. Ct. 836, 30 L. Ed. 895, capital invested in savings banks cannot be regarded as moneyed capital, within the meaning of section 5219, exemption of which from taxation can constitute a discrimination within the inhibition of that section. It seems to me that building associations are certainly not to be differentiated in their purpose or object, or practical effect, from savings banks, and that the capital invested in them, though subject to a somewhat different rule of taxation, cannot be regarded as moneyed capital in competition with moneyed capital in national banks, any more than is capital invested in savings banks. The chief object of building associations is to encourage the building of small houses by poor people, and the saving from their earnings, week by week, of an amount sufficient to pay the mortgage debts incurred in the purchase of the land and the construction of the house. The mere fact that every shareholder in a building association need not be a borrower cannot, I think, change the effect of the general purpose of the building association law."

We deduce from a reading of many cases that it is the theory of the law that a man's moneyed capital is the difference between his credits and his debts, and that a tax on the difference is a tax on all he has. If this be not true, then all deductions are in direct violation of section 1, Article 10 of the Constitution of Indiana, which provides:

"The general assembly shall provide by law for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be especially exempted by law."

Under this provision, the general assembly is required to prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal.

As said in the case of *Florer, Treasurer et al.* v. *Sheridan, Administratrix* (1894), 137 Ind. 28, 41, 36 N. E. 365:

"The legislature had a right, under its provisions, to equalize these burdens by a regulation which would tend to secure a just valuation. The plan adopted was to ascertain the just value of the credits after deducting the indebtedness. Credits are, by the constitution, property, and as such are to be taxed. Their just value is to be ascertained by subtracting the *bona fide* indebtedness from the gross amount of the notes, accounts and other choses in action, and the balance is to be returned as belonging to the individual."

The spirit of the taxing laws is to secure a just valuation upon principles of uniformity, equality and justice. What property shall be taxed, and how it shall ■ be taxed are legislative questions, so long as there is uniformity and equality of rate as to those of the same class; and the subjects and methods of taxation are legislative matters, and cannot be disturbed so long as the method prescribed is applicable alike to all within the prescribed class. *Smith et al.* v. *Stephens, Treasurer* (1910), 173 Ind. 564, 91 N. E. 167; *Board of Commissioners of the County of Johnson* v. *Johnson et al.* (1909), 173 Ind. 76, 89 N. E. 590.

The appellant cites the cases of *Evansville National Bank* v. *Britton* (1882), 105 U. S. 305, 26 L. Ed. 1044; *Wasson* v. *First National Bank* (1886), 107 Ind. 206, 8 N. E. 97; and *City of Indianapolis* v. *Vajen* (1887), 111 Ind. 240, 12 N. E. 311, to the proposition that a shareholder in a national bank is entitled to debt deductions. It may be that these decisions found some reason to rest upon in the early decisions of the Supreme Court of the United States relative to section 5219, *supra,* but certainly, since the decision of *Mercantile Bank* v. *New York, supra,* and later decisions of that court, the reason no longer prevails.

The case of *First National Bank of Richmond* v. *Turner, Treasurer* (1900), 154 Ind. 456, 57 N. E. 110, held that the owner of stock in a national bank is not entitled to a deduction of his bona fide indebtedness from the assessed valuation of his stock. It also held that "in the light of recent decisions of the Supreme Court of the United States, the case of *Wasson* v. *First National Bank*, 107 Ind. 206, is not controlling." As the Vajen case, *supra*, was based upon the Wasson case, it fails for the same reason. All of the questions presented in the instant case were not presented in the case of *First National Bank* v. *Turner, supra*, but in that case the question of whether or not a shareholder could deduct his bona fide indebtedness from the assessed value of his stock was presented, and it was held that he could not.

In the case of *Board of Commissioners of the County of Johnson* v. *Johnson et al.* (1909), 173 Ind. 76, 92, 89 N. E. 590, it was said:

"It is quite clear that the individual banker would have no right to deduct indebtedness outside the banking indebtedness, . . ."

The provision of the taxation laws of Indiana provides for the deduction of indebtedness from credits, but there is no provision to deduct debts from shares of stock in a bank. Credits and shares of stock are two distinct things, and neither includes the other. In arriving at the value of the shares, the credits shall be given and bona fide indebtedness deducted therefrom. §14117, Burns, *supra*. In this way the individual shareholder receives the benefit of the deduction of debts from credits, and such is the only way in which he is entitled to any deduction from the value of his stock. But the law does not authorize the bank to deduct debts disconnected from the banking business, nor the shareholder to have his individual

debts deducted from the value of his shares of stock. *Board* v. *Johnson, supra; First National Bank* v. *Turner, supra.*

As said in the case of *Commercial National* v. *Chambers* (1900), 21 Utah 324, 61 Pac. 560, 56 L. R. A. 346, 351:

"No doubt the banking corporation in its capacity as an artificial person—as a distinct entity—has the right to have all its debts contracted by it in the conduct of its banking business deducted from its credits or the moneyed capital employed, for that is necessary to determine the real value of the stock, which value amounts simply to what can be realized from the property of the corporation after its obligations are paid. This will reduce the value of the credits or capital in the amount of the debts, and, as the value of the credits or capital enters into the value of the shares, the value of the shares will be proportionately reduced for the purpose of the assessment. In this way the individual shareholder receives the benefit of the deduction of debts from credits, and such is the only way in which he is entitled to any deduction from the value of his stock. But the law does not authorize the bank to deduct debts disconnected from the banking business, nor the bank or shareholder to have his individual debts deducted from the value of his shares of stock. The debts incurred in the conduct of the corporate business are deducted from the credits or moneyed capital, so that the actual value of the capital employed may be determined, and the taxes levied thereon.

"Under the system of taxation prescribed by the Constitution and statutes of this state, a banking corporation, state or national, has the same immunity from excessive taxation, and the same right to deductions of debts from credits as any other corporation or any private person has; but 'to place the holder of national bank shares into the class of bankers, and treat his shares as stocks until the net value is fixed, and then change his stock into a credit, and take him out of the class of bankers and place him into the class of private individuals, so as to enable him still further to reduce his stock thus changed into a credit, by deducting therefrom his legal *bona fide* debts, would be discrimi-

nating in favor of such national bank shareholder, and would be giving him two chances to escape taxation, while other bankers and private individuals have but one.' "

All of the foregoing language is applicable in the instant case. The Supreme Court of the United States (1901), 182 U. S. 556, 560, 21 Sup. Ct. 863, affirmed the above-mentioned case, and used the following language:

"The claim of the benefit of the provisions of section 5219 of the Revised Statutes of the United States is unavailing, for the reason that there was neither averment nor proof of facts taking the case out of the operation of recent decisions of this court. Those decisions held that the term 'moneyed capital,' as employed in section 5219 of the Revised Statutes, forbidding greater taxation of shareholders of national banks than is imposed on other moneyed capital, does not include capital which does not come into competition with the business of national banks, and that it must be satisfactorily made to appear by the proof that the moneyed capital claimed to be given an unjust advantage is of the character just stated." *First National Bank of Wellington* v. *Chapman* (1899), 173 U. S. 205, 219, 19 S. Ct. R. 407, cited immediately thereafter.

Under section 14113, Burns, *supra,* the shares of bank stock are assessable to the owner where the bank is situated. If deductions for individual indebtedness are allowed from the bank stock, then an anomalous situation would arise in the case of the owners of shares of stock who are non-residents. Could such deductions be allowed to resident owners and denied to non-resident owners over whom the state would have no jurisdiction and no right to inspect his tax returns? If this could be done, then the shares of the non-residents would clearly be taxed at a greater rate than those of the resident owner.

It does not appear in the instant case, either by the special findings or by the evidence, that the moneyed

capital of individual citizens has been given any unjust advantage over the moneyed capital of national banks or the owners of shares in said banks. And there is nothing in the statutes of Indiana indicating any intention upon the part of the legislature to discriminate against the holder of national bank shares as against other property of like character.

We cannot say that any moneyed capital in the hands of individuals received favorable discrimination in taxation as against shares in national banks in the instant case; and, therefore, the second proposition of appellant is not sustained.

From what we have heretofore held in this opinion, it necessarily follows that we hold that Chapter 260 of the Acts of 1921, being section 14103, Burns, *supra*, is not unconstitutional as being in violation of Section 1, Article 10 of the Constitution of Indiana.

The provision of said section and article of the Constitution is complied with when all property is assessed at its true cash value and at the same rate; there is then uniformity and equality of assessment and taxation. Our tax system here involved is based upon the true cash value of all property. *Florer, Treasurer* v. *Sheridan, supra; Board* v. *Johnson, supra; Smith* v. *Stephen, supra; Cleveland C. C. & St. L. R. Co.* v. *Backus, Treasurer* (1893), 133 Ind. 513, 33 N. E. 421.

While Chapter 260 of the Acts of 1921, being section 14103 of Burns 1926, was in full force and effect when the instant case was begun and tried in the lower court, said act was repealed by the legislature of 1933. Section 40 of the Intangible Tax Act, page 540.

We think the lower court did not err in its conclusions of law, nor in the overruling of the motion for a new trial.

Judgment affirmed.